UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ARTHUR ELIAV,                                                          COMPLAINT
                             Plaintiff,

              - against -                                              Case No: 22 CIV _____

ROOSEVELT ISLAND OPERATING
CORPORATION; SHELTON HAYNES;                    JURY TRIAL DEMANDED
GRETCHEN ROBINSON; and TAJUNA
SHARPE,
                             Defendants.
-----------------------------------------------------------X

COMES NOW Arthur Eliav ("Eliav"), by his attorneys, The Law Office of Neal

Brickman, P.C., located at 420 Lexington Avenue - Suite 2811, New York, New York 10170,

and as and for his complaint against defendants, Roosevelt Island Operating Corporation

("RIOC"), Shelton Haynes ("Haynes"), Gretchen Robinson ("Robinson"), Tajuna Sharpe

("Sharpe," and together with RIOC, Haynes, and Robinson the "Defendants" or "defendants,"

and together with Haynes, and Robinson, the "Individual Defendants"), hereby avers and states

as follows:

<u>Statement Pursuant to Local Civil Rule 1.9</u>

1.      Plaintiff is an individual citizen of the United States of America and, as such, has

no interests or subsidiaries that need to be disclosed.

<u>Nature of the Action</u>

2.      This action arises under Title VII of the Civil Rights Act of 1964, as amended;

New York Executive Law § 296 et seq. and New York City Administrative Code § 8-107 et seq.,

as well as various additional state and common law causes of action based on Defendants'

improper, discriminatory, retaliatory and disparate treatment of Eliav.

3.    This action seeks compensatory and punitive damages, as well as costs and attorneys' fees, based on the continuing policy of discriminatory and retaliatory actions undertaken by Defendants in improperly denying promotions to, and terminating, Eliav, as well as subjecting him to an ongoing hostile work environment and continued harassment based on improper animus as a result of his religion, race, and national origin and in retaliation for his complaints of discrimination and truthful compelled testimony, acts that he had taken to protect his own civil rights, as well as the rights of others.

## Jurisdiction

4.    Jurisdiction over the federal claims is invoked pursuant to 28 U.S.C. § 1331, in that these claims arise under the laws of the United States; and over the state law claims pursuant to the doctrine of pendent jurisdiction as codified in 28 U.S.C. § 1367.  This action is timely filed within ninety (90) days of the issuance on August 31, 2022 of a Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC"), a copy of which is annexed hereto as Exhibit "A".

## Venue

5.    This action is properly laid in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1), because at least one defendant resides in this judicial district, and (b)(2), because a substantial part of the events and omissions giving rise to Eliav's claims occurred in this judicial district.

## Parties

6.    Eliav is an individual citizen of the United States of America and a practicing observant member of the Jewish faith. He is a Caucasian, observant Orthodox Jewish male who was born in Tashkent, Uzbekistan in 1981, of Central Asian/Iranian extraction, and who came to

the United States when he was eleven (11) years old.  Eliav was, at all relevant times hereto,

employed as in-house counsel for RIOC.

7.      RIOC is a public benefit corporation duly authorized and operating under the laws

of the State of New York within the City of New York.

8.      Upon information and belief, Haynes is an individual citizen of the United States,

a resident of the State of New York and the President and CEO of RIOC.   Haynes qualifies as an

"employer" for purposes of individual liability under New York Executive Law § 296, and New

York City Administrative Code §§ 8-107 and 8-502 because he participated directly in the

discriminatory conduct at issue in this case and as an "employer" under § 296 of the Executive

Law by virtue of his ability to affect the terms and conditions of Eliav's employment.  Moreover,

Haynes is an aider and abettor who actually participated in the conduct giving rise to the claims

of discrimination herein.  Haynes is African-American.

9.      Upon information and belief, Robinson is an individual citizen of the United

States, and a resident of the State of New York who served as the General Counsel of RIOC at

various times relevant hereto.  Robinson qualifies as an "employer" for purposes of individual

liability under New York Executive Law § 296, and New York City Administrative Code §§ 8-

107 and 8-502 because she participated directly in the discriminatory conduct at issue in this case

and as an "employer" under § 296 of the Executive Law by virtue of her ability to affect the

terms and conditions of Eliav's employment.  Moreover, Robinson is an aider and abettor who

actually participated in the conduct giving rise to the claims of discrimination herein. Robinson

is African-American.

10.     Upon information and belief, Sharpe is an individual citizen of the United States

and a resident of the State of New York who at all relevant times hereto served as Director of

Human Resources or as Assistant Vice-President ("AVP") for Administration at RIOC.   Sharpe

qualifies as an "employer" for purposes of individual liability under New York Executive Law §

296, and New York City Administrative Code §§ 8-107 and 8-502 because she participated

directly in the discriminatory conduct at issue in this case and as an "employer" under § 296 of

the Executive Law by virtue of her ability to affect the terms and conditions of Eliav's

employment.  Moreover, Sharpe is an aider and abettor who actually participated in the conduct

giving rise to the claims of discrimination herein. Sharpe is African-American.

Preliminary Statement - Summary of Claims

11.      The gravamen of Eliav's claim is that RIOC, and the Individual Defendants,

improperly and routinely passed him over for promotion on the basis of his race, religion, and

national origin, and retaliated against him for providing truthful compelled testimony in support

of claims of discrimination asserted by a former employee of RIOC. Thereafter, Eliav was

further discriminated and retaliated against for raising complaints of prejudice when RIOC,

through the Individual Defendants, summarily terminated his employment without rationale,

reason, or justification.

General Background and Summary Statement of Facts

12.      Eliav interned in the RIOC Legal Department during the summers of 2004 and

2005 while still attending law school.

13.      On September 11, 2006, after graduating from law school, Eliav was hired by

RIOC for a full-time position as Assistant General Counsel.

14.      On or about September 11, 2011, as a result of his exemplary work, Eliav was

promoted to the position of Associate General Counsel.  Since that time, Eliav assisted in the

transition of no fewer than four General Counsels, each one taking the position for which he was

4

eminently, and recently, more qualified for, and helping each transition into the role he should have been promoted into.

15.     Eliav had a distinguished career at RIOC, routinely receiving praise and positive performance reviews. During this same period, Eliav routinely was asked to serve as the *de facto* General Counsel, at times for months, while the position was ultimately filled by other lawyers.

16.     On or about April 25, 2016, RIOC's former General Counsel, Donald Lewis, filed a federal civil rights action against RIOC.  In the course of that litigation, Eliav was called to provide testimony concerning relevant factual matters.  That truthful testimony was favorable to Mr. Lewis.  Eventually, Mr. Lewis and RIOC settled the action.

17.     On or about September 27, 2018, the federal court awarded Mr. Lewis' counsel attorneys' fees in an amount in excess of $418,266.00 as well as certain costs against RIOC. RIOC's then General Counsel, who later became RIOC's President and CEO, Susan Rosenthal, held Eliav's truthful testimony against him.

18.     Rosenthal denied Eliav's requests for promotion or raises and, when the opportunity arose, first filled the vacant General Counsel position with another attorney, Jacqueline Flug, from outside of RIOC, without ever posting the position, much less giving Eliav the opportunity to apply for the same.  The new female hire had far less relevant experience than Eliav, but had never testified on behalf of someone claiming discrimination against RIOC.  Once she began her employment, it fell to Eliav to educate her on her responsibilities.  Eliav ultimately was forced to take on many of the duties that should have been fulfilled by the General Counsel.

19.     While Flug was RIOC's General Counsel, Robinson served as RIOC Internal Controls and Compliance Officer and was not a part of the RIOC Legal Department.  Robinson then took a job outside of RIOC.  When she did so, all of her Internal Control duties were

transferred to Eliav, without any reduction of his existing duties.  No increase in compensation or

pay was provided to Eliav with this material increase in duties – another retaliatory and hostile

act.

20.     Eliav pointed out the inequity of the situation to Flug and Rosenthal, but the new

assignment remained over his objection.

21.     Thereafter, Flug decided to leave RIOC's employ.  Before her departure,

however, in furtherance of RIOC's unstated policy of precluding Eliav's advancement due to his

truthful testimony in Mr. Lewis's litigation, Flug generated an improper review of Eliav in

advance of RIOC rehiring of Robinson to replace Flug as the General Counsel.  This review was

clearly made in contravention of RIOC policy, as it was never finalized or shown to Eliav.  Eliav

was never asked to comment on it or given an opportunity to provide a responsive statement. It is

filled with half-truths and misstatements.  It was merely a draft that was held in a concealed file

to be used to justify the rehiring of Robinson as the new General Counsel.

22.     Robinson, as Flug before her, was hired without the position being advertised,

much less opened to Eliav to apply for, again, in contravention of RIOC written policy.

23.     At the time of her re-hire, Robinson had less relevant experience than Eliav and

had never worked in a corporate legal department before, but had not testified in a discrimination

action against RIOC.

24.     Despite this most recent discriminatory and retaliatory denial of promotion, Eliav

continued to conduct himself professionally and complete all duties assigned to him, including

many assignments that would normally be the responsibility of the General Counsel.

25.     In August of 2021, Haynes, the then and current President and CEO of RIOC,

informed Eliav that the pandemic-related hiring and promotion freeze had ended and that the

new budget was being prepared.  Eliav reiterated his desire to be promoted and noted his eminent

qualifications, including his work history at RIOC. Haynes stated that he was in favor of the idea

of Eliav's promotion, but needed to discuss it with Robinson and Sharpe.

26.     On or about September 23, 2021, numerous promotions were reported, but Eliav

was not promoted at that time.

27.     Approximately one week later, on or about September 29, 2021, a RIOC Board

meeting was held via Zoom.  In contravention with past practice, the budget released to the

public in connection with that Board meeting contained no detailed description of the staffing

plan and no salaries of individual employees were reported.

28.     In addition, the Legal Department was designated in the new budget as having

four positions in addition to the General Counsel, who was then included as part of the Executive

Staff.  This signaled that an additional staff member would be potentially brought into the Legal

Department.

29.     A more detailed iteration of the new budget, available on RIOC's internal shared

drive, indicated that the new position within the Legal Department was an additional Associate

Counsel position, initially slated at a slightly lower compensation rate than that of Eliav.

30.     However, subsequent versions of the detailed budget available on the internal

shared drive then added the at issue Deputy General Counsel position, and additional

compensation schedules seemingly modified at the whim of Haynes and his executive team and

without any connection to the actual needs of the RIOC Legal Department.

31.     Shortly after the summary budget was made public in September 2021, a Freedom

of Information Law (FOIL) request was sent to RIOC from a local reporter, David Stone,

seeking, *inter alia*, "a document listing all RIOC employees, including executives, and their

annual pay." In retaliation for Mr. Stone's prior requests and sometimes unflattering articles about RIOC management, Robinson developed an unwritten policy pursuant to which all such requests were routinely subjected to unreasonable delays, regardless of whether the responsive materials were, or should have been, readily available.

32.     Towards the end of Robinson's internally prescribed delay period, after consulting with Eliav, the assigned attorney requested that Sharpe provide the requested information as required by law.

33.     Robinson resisted turning over the requested, and required by law, information, suggesting at various points that RIOC (a) provide incomplete information; (b) ignore the plain obligations set forth by law; and (c) simply reference an unaffiliated website that purported to have certain of the requested information, but actually reflected a prior year's budget information.

34.     As a result of this back and forth between Robinson and the assigned attorney, Eliav was forced to get further involved and emailed Robinson that RIOC had to abide by the law and provide the requested documents.

35.     After significant back and forth, on or about November 19, 2021, Robinson finally agreed, "reluctantly though," to allow for compliance with applicable law.

36.     However, when Haynes learned of the proper, lawful, and required disclosure at the end of the workday on Friday November 26, 2021, the day after Thanksgiving, in a rare show of concern, he directly called the assigned attorney and directed her to draft a memorandum laying out the applicable statutory and case law, which demonstrated the accuracy of her and Eliav's position.

37.     In the interim, on Wednesday, November 24, 2021, Robinson informed Eliav and the then-Assistant General Counsel Lada Stasko ("Stasko") that RIOC was expanding its legal team and adding a Deputy General Counsel position that would be posted internally and was allegedly required because RIOC was receiving an increased number of commercial litigation cases – an explanation that had little basis in reality.  Robinson specifically invited Eliav to apply for the position – giving a nod to his undeniable and continued successes at RIOC.

38.     When the posting was received, it was clearly drafted in a way to specifically exclude Eliav, who had worked tirelessly and loyally for RIOC since his graduation from law school over 15 years prior.

39.     The posting required specific trial experience that no one at RIOC could obtain because RIOC outsourced all of its trial work.  In any event, trial work was largely irrelevant to the duties and responsibilities of any counsel for RIOC, whether the General Counsel, Deputy General Counsel, Associate Counsel, or Assistant Counsel – who by mandate, practice, and design relied on highly skilled teams of outside counsel (including insurance counsel) to litigate on behalf of RIOC.  Again, at that juncture, Eliav had more relevant experience and seniority than Robinson, the General Counsel.

40.     Robinson specifically invited Eliav and Stasko to raise any questions or concerns that they had with the posting or the potential position.  Even though the position was advertised internally, i.e., only to RIOC employees, Eliav and Stasko, the only attorneys in RIOC's Legal Department aside from the General Counsel, were both precluded from applying for the position by virtue of not having the trial experience required by the posting.  Upon information and belief no previous postings or job descriptions for RIOC attorneys ever had this trial experience requirement.  Incidentally, the lack of requisite trial experience is what conveniently

distinguished Eliav from Markus Sztejnberg, the attorney who served for several months as

RIOC's Special Counsel for Ethics, Risk and Compliance simultaneously servicing RIOC, the

Battery Park City Authority, and the New York State Liquor Authority. While not being a full-

time RIOC employee, Sztejnberg would be theoretically eligible to respond to this internal

posting.

41.      Clearly, the trial experience requirement was inserted into the posting only to

preclude Eliav from obtaining the position in favor of Sztejnberg. In fact, after Eliav was

terminated, Sztejnberg was hired for the position of RIOC's Deputy General Counsel.

42.      At the time of his hire, Sztejnberg, who is not an Orthodox Jew, had not testified

in a discrimination complaint against RIOC and had less relevant experience than Eliav and had

specifically informed RIOC that he was awaiting on an offer from a private firm – an offer which

he readily accepted when it came less than two months into his tenure at RIOC.

43.      On Monday, November 29, 2021, Eliav wrote to Robinson, copying Sharpe, and

Haynes, as well as Stasko, to express his concerns with the posting; the improper assumptions

upon which it was allegedly based; the fact that it appeared specifically to exclude anyone who

had dedicated his/her whole career to RIOC, as he had; the impropriety of the pre-qualifications

set forth in the posting; the fact that this position was not being handled as recent promotions

within RIOC had been handled (such promotions, as well known to RIOC and its executives,

including those of, *inter alia*, Robinson, Sharpe and Altheria Jackson (the then AVP of

Operations at RIOC), all African-American females); the fact that his promotion was not being

handled fairly or in the normal process that was afforded to others.

44.      In a follow-up email, Eliav reiterated that the process was rigged and unfairly

prejudicial and specifically designed to exclude him personally, alluding to the prior biases

demonstrated against him based on his religion, ethnicity, and prior complaints of discrimination.

Eliav reported these concerns of disparate treatment to Robinson, the RIOC General Counsel,

precisely in the manner prescribed by the RIOC Policies on Reporting Misconduct and

Protection Against Adverse Personnel Action (also known as the Whistleblower Protection

Policies) adopted by the RIOC Board of Directors on March 25, 2010 pursuant to Public

Authorities Law § 2857 and in a manner clearly protected by Title VII's own strictures against

discrimination, disparate treatment, and retaliation.

45.     Less than 48 hours later, while he was out of the office sick, RIOC, through

Robinson and with the knowledge and consent of the other Individual Defendants, summarily

terminated Eliav by email at approximately 1:45 p.m.  The notice included a letter of termination

and a proposed severance agreement.  As a matter of practice, RIOC only offers severance to

employees terminated without cause or as part of reductions in force. The Individual Defendants

orchestrated the termination because Haynes was angry about the two emails written by Eliav

seeking to point out RIOC and the Individual Defendants' disparate treatment of Eliav.

46.     Less than ten minutes later, Sharpe emailed all staff informing them of Eliav's

termination.  Later that same afternoon, within approximately one hour, hard copies of the same

documents were delivered to Eliav's house.  At the time of Eliav's termination, he was the sixth

ranking employee at RIOC based on salary.  Of the five employees that ranked higher than Eliav,

four were African-American and were all recently promoted into their positions – none of them

had nearly the longevity that Eliav had at RIOC.  The remaining higher-ranking employee, a

Caucasian male with extensive relevant experience, was fired within months after Eliav's

termination.  Eliav's employment was terminated as part of an overall systematic elimination of

non-African-American employees from positions of authority at RIOC.  At the time of Eliav's

termination, Eliav had significantly more longevity at RIOC than any of the six top-paid

employees at RIOC.

47.     RIOC, and its executive level management, including, *inter alia*, Haynes,

Robinson, and Sharpe, among other things, colluded, conspired and acted in concert to, and did,

subject Eliav to continual (i) discrimination, disparate treatment, retaliation and harassment

based upon his race, religion, and national origin/ethnicity; and (ii) discrimination, disparate

treatment and retaliation based upon Eliav's speech in reporting, among other things,

misconduct, disparate treatment, discrimination and a hostile work environment and in providing

truthful testimony in the Lewis matter. When Eliav spoke out against and reported unlawful acts,

misconduct, discrimination, disparate treatment, preferential treatment, and a hostile work

environment at RIOC and testified truthfully, he was retaliated against and unlawfully terminated

from RIOC.

AS AND FOR A FIRST CAUSE OF ACTION
(Religious and National Origin Discrimination Under Title VII and Against RIOC)

48.     Plaintiff repeats, realleges, and reiterates each and every allegation set forth in

paragraph "1" to "47" above with the same force and effect as if fully set forth herein at length.

49.     As set forth above, Eliav is a Caucasian, observant Orthodox Jewish male who

was born in Tashkent, Uzbekistan in 1981, of Central Asian/Iranian extraction, and who came to

the United States when he was eleven (11) years-old.

50.     Eliav is a practicing Orthodox Jew.  He keeps the Sabbath.  He wears a yarmulke.

He keeps kosher, and follows the strictures of Orthodox Judaism.

51.     Eliav was routinely denied promotions, and, in fact, denied the right to even apply

for promotions on numerous occasions at RIOC.

52.     The two times prior to his improper termination that the General Counsel position

was open, RIOC filled it with an outside attorney with materially less experience than Eliav and

for whom, as a result, Eliav was routinely required to complete portions of their assigned duties.

53.     During those years, Eliav was not terminated because he was a good employee

who did not complain about being passed over by less experienced individuals who had not

testified on behalf of individuals alleging violations of their civil rights.  However, he was denied

promotional opportunities in favor of objectively less-qualified and less-experienced candidates.

54.     Moreover, in each instance, RIOC improperly hired the new General Counsel

without posting the position and in contravention of its own policies and procedures for the

filling of vacant positions.

55.      In each such circumstance, RIOC acted to deny Eliav opportunities for promotion

and advancement.

56.     Although in connection with the most recent opportunity for promotion Eliav was

finally invited to apply and was informed in advance of the potential hiring, he was again

rebuffed, just in a different fashion.  In the most recent posting, RIOC and the Individual

Defendants inserted criteria into the job description for the sole purpose of again excluding Eliav

from obtaining advancement in favor of another candidate.

57.     RIOC and the Individual Defendants simply did not want the practicing Orthodox

Jew to be any higher in management at RIOC.  Former General Counsel Jacqueline Flug, who

attended a Reform Jewish temple, routinely made comments that Orthodox Judaism was not

egalitarian enough.  On numerous occasions, she bemoaned the fact that Eliav would not count

her and Susan Rosenthal for a quorum required for Jewish communal prayer because Orthodox

Judaism requires such quorum to consist of ten adult Jewish males.  On one occasion, Flug also

told Eliav that her mother would not shop at stores owned by Orthodox Jews because, according

to her, Orthodox Jews do not accord women the same rights.  Incidentally, the Deputy General

Counsel position, for which Eliav was disingenuously invited to apply, was ultimately given to

Markus Sztejnberg, a non-Orthodox Jew of European/Ashkenazi extraction, who informed RIOC

and the Individual Defendants that he was waiting on an offer from a private firm.  As soon as he

received that offer, within less than two months of his hire by RIOC, Sztejnberg left as promised.

58.      As a result of such discrimination, Eliav has been damaged in an amount to be

determined at trial, but in no event less than $2,500,000.00, as well as entitlement to the costs

and expenses of this action, including reasonable attorneys' fees; all warranting, in addition, the

imposition of a punitive damages award.

AS AND FOR A SECOND CAUSE OF ACTION
(Improper Retaliation Under Title VII Against RIOC)

59.      Plaintiff repeats, realleges, and reiterates each and every allegation set forth in

paragraph "1" to "58" above with the same force and effect as if fully set forth herein at length.

60.      Title VII prohibits retaliation for protected activities including, but not limited to,

complaining about discrimination, testifying in support of an individual who is claiming

discrimination, and noting disparate treatment of individuals on the basis of discrimination.

61.      In this case, Eliav participated in each of these protected activities.

62.      Within forty-eight hours of his last complaint of disparate treatment, he was

summarily terminated.

63.       As a result of such discrimination, Eliav has been damaged in an amount to be

determined at trial, but in no event less than $2,500,000.00, as well as entitlement to the costs

and expenses of this action, including reasonable attorneys' fees; all warranting, in addition, the

imposition of a punitive damages award.

## AS AND FOR A THIRD CAUSE OF ACTION
(Religious and National Origin Discrimination Under New York Executive Law § 296, and New York City Administrative Code §§ 8-107 and 8-502 against the Individual Defendants)

64.     Plaintiff repeats, realleges, and reiterates each and every allegation set forth in paragraph "1" to "63" above with the same force and effect as if fully set forth herein at length.

65.     Each of the individual defendants actively and personally participated in the discrimination and disparate treatment of Eliav as set forth above.

66.     They passed him over for promotion and otherwise denied him opportunities for advancement.

67.     They required him to complete the work of the General Counsel without credit or additional compensation.

68.     They assigned him additional duties outside of his area of expertise and job description rather than hire new or additional personnel.

69.     While they repeatedly offered internal promotions without job postings to African-American employees and executives, they did not extend that practice to Eliav, a Caucasian observant Orthodox Jew.

70.     As a result of such discriminatory disparate treatment, Eliav has been damaged in an amount to be determined at trial, but in no event less than $2,500,000.00, as well as entitlement to the costs and expenses of this action, including reasonable attorneys' fees; all warranting, in addition, the imposition of a punitive damages award.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Improper Retaliation Under New York Executive Law § 296, and New York City Administrative Code  §§ 8-107 and 8-502 against the Individual Defendants)

71.     Plaintiff repeats, realleges, and reiterates each and every allegation set forth in paragraph "1" to "70" above with the same force and effect as if fully set forth herein at length.

72.     Each of the individual defendants actively and personally participated in the discrimination and disparate treatment of Eliav as set forth above.

73.     The New York Executive Law and the New York Administrative Code each prohibit retaliation for protected activities including, but not limited to, complaining about discrimination, testifying in support of an individual who is claiming discrimination, noting disparate treatment of individuals on the basis of discrimination.

74.     In this case, Eliav participated in each of these protected activities.

75.     Within forty-eight hours of his last complaint of disparate treatment, he was summarily terminated.

76.      As a result of such discrimination, Eliav has been damaged in an amount to be determined at trial, but in no event less than $2,500,000.00, as well as entitlement to the costs and expenses of this action, including reasonable attorneys' fees; all warranting, in addition, the imposition of a punitive damages award.

Jury Demand

77.     Plaintiff hereby demands a trial by jury.

WHEREFORE, Eliav respectfully demands judgment against Defendants on his various

causes of action set forth herein, along with any such other relief to Eliav as the Court deems just

and proper.

Dated:  New York, New York
        November 22, 2022

 

_____

The Law Offices of Neal Brickman, P.C.
Attorneys for Arthur Eliav
Ethan Leonard
420 Lexington Avenue - Suite 2811
New York, New York 10170
(212) 986-6840
(212) 986-7691 (Fax)
ethan@brickmanlaw.com