UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

ARTHUR ELIAV,

                              Plaintiff,

        -against-

**Civil Case No. 1:22-cv-09978**

ROOSEVELT ISLAND OPERATING
CORPORATION; SHELTON HAYNES;
GRETCHEN ROBINSON; AND TAJUNA
SHARP,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

**BOND, SCHOENECK & KING, PLLC**
Howard M. Miller, Esq.
*Attorneys for Defendants*
1010 Franklin Avenue
Garden City, New York 11530
(516) 267-6300

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTS ..................................................................................................................................... 3

LEGAL STANDARD................................................................................................................ 4

ARGUMENT ............................................................................................................................ 5

    POINT I
    MANY OF PLAINTIFF'S CLAIMS ARE TIME-BARRED AND SHOULD BE
    DISMISSED ........................................................................................................................ 5

    POINT II
    PLAINTIFF'S DISCRIMINATION CLAIMS FAIL AS A MATTER OF LAW ............ 6

        A.    Plaintiff's failure to promote claim fails as a matter of law ...................... 6

            1.    The allegations in the Complaint rest on a false syllogism ........... 6

            2.    Stray Remarks from non-decision makers years earlier do not
                salvage the claims .......................................................................... 9

            3.    Plaintiff has failed to adequately plead the qualifications for the
                position were discriminatory or that his qualifications were
                superior to the selected candidate ................................................. 11

        B.    The Complaint Fails to State A Claim For Discriminatory Discharge..... 16

    POINT III
    THE RETALIATION CLAIM FAILS AS A MATTER OF LAW ............................... 18

        A.    The five-year gap between Plaintiff's deposition testimony and the
            adverse actions is too long ...................................................................... 18

        B.    Plaintiff's November 29, 2021 emails do not constitute protected activity
            ....................................................................................................... 20

        C.    Plaintiff cannot establish that his protected activity was the but-for cause
            for the denial of his promotion and termination. ..................................... 21

    POINT IV
    THE INDIVIDUAL DEFENDANTS CANNOT BE PERSONALLY LIABLE............. 22

CONCLUSION......................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraham v. New York City Education*,
   398 Fed. Appx. 633 (2d Cir. 2010) ................................................................................11

*Ahmad v. White Plains City School District*,
   2019 WL 3202747 (S.D.N.Y. 2019) ..............................................................................9, 15

*Antione v. State University of New York, Downstate Medical Center*,
   2021 WL 6101468 (2d. Cir, 2021) .................................................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................5, 14, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 644, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007) ..............................................14

*Bentley Jr., v. Mobil Gas Station*,
   599 Fed. Appx. 395 (2d Cir. 2015) .................................................................................16

*Blanco v. Brogan*,
   620 F. Supp. 2d 546 (S.D.N.Y. 2009) .............................................................................22

*Boncoeur v. Haverstraw-Stony Point Central School District*,
   2022 WL 845770 (S.D.N.Y. 2022) ...................................................................................8

*Bowen-Hooks v. City of New York*,
   13 F. Supp. 3d 179 (E.D.N.Y. 2014) ...............................................................................21

*Buompane v. Citibank, N.A.*,
   2002 WL 603036 (S.D.N.Y. 2002) ..................................................................................12

*Byrnie v. Town of Cromwell, Bd. of Educ.*,
   243 F.3d 93 (2d Cir. 2001) ..........................................................................................11, 12

*Carrion v. Yeshiva University*,
   535 F.2d 722 (2d Cir. 1976) .............................................................................................7

*Clyburn v. Shields*,
   33 F. App'x 552 (2d Cir. 2002) .........................................................................................9

ii

*Cobian v. City of New York*,
2000 WL 1782744 (S.D.N.Y. Dec. 6, 2000) ...........................................................................18

*Committee v. Yen*,
2018 WL 2108193 (N.D.N.Y. May 7, 2018) ...........................................................................13

*Cortec Indus., Inc,. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir.1991) .........................................................................................................5

*Crews v. Trs. of Columbia University*,
452 F. Supp. 2d 504 (S.D.N.Y. 2006) .....................................................................................12

*Diaz v Poly Prep Day School*,
2022 WL 2803259 (E.D.N.Y. 2022) ..........................................................................................8

*Donlon v. Group Health Inc.*,
2001 WL 111220 (S.D.N.Y. Feb. 8, 2001) ..............................................................................18

*DuBois v. State of N.Y.*,
966 F. Supp. 144 (N.D.N.Y. 1997) ..........................................................................................15

*Duff v. Pristine Services, Inc.*,
2021 WK 66391 (S.D.N.Y. 2021) ............................................................................................19

*Ezekwo v. N.Y.C. Health & Hosps. Corp.*,
940 F.3d 775 (2d Cir. 1991) ....................................................................................................20

*Fattoruso v. Hilton Grand Vacations Co., LLC*,
*525 Fed.Appx. 26 (2d Cir. 2013)* ............................................................................................20

*Finn v. New York State Off. of Mental Health-Rockland Psychiatric Ctr.*,
No. 08-cv-5142, 2011 WL 4639827, 2011 U.S. Dist. LEXIS 115950 (S.D.N.Y. Oct. 6, 2011),
*aff'd*, 489 F. App'x 513 (2d Cir. 2012) ...................................................................................21

*Fleurentin v. New York City Health and Hospitals*,
2020 WL 42841 (E.D.N.Y. 2020) .......................................................................................15, 16

*Ford v. Bernard Fineson Development Center*,
81 F.3d 304 (2d Cir. 1996) .......................................................................................................5

*Forde v. Empire State College*,
2011 WL 4376499 (S.D.N.Y. 2011) .........................................................................................17

*Freckleton v. Amulnz, NY LLLC*,
2022 WL 4644673 (E.D.N.Y. 2022) ..........................................................................................8

*Glascoe v. Solomon*,
2020 WL 1272120 (S.D.N.Y. Mar. 17, 2020) ...........................................................................8

iii

*Goins v. Finger Lakes Serv. Grp.*,
  2014 WL 204207 (W.D.N.Y. Jan. 17, 2014) ............................................................6

*Green v. Mount Sinai Health System*,
  2019 WL 4392691 (S.D.N.Y. 2019) ......................................................................20

*Hartley v. Rubio*,
  785 F. Supp. 2d 165 (S.D.N.Y. 2011) ....................................................................18

*Hollander v. Am. Cynamid Co.*,
  895 F.2d 80 (2d Cir. 1990) ....................................................................................18

*Hu v. UGL Servs. Unicco Operations Co.*,
  2014 U.S. Dist. LEXIS 145552 (S.D.N.Y. Oct. 9, 2014) ........................................22

*Hussey v. New State Department of Attorney General*,
  933 F. Supp. 2d 399 ..............................................................................................18

*in Soto v. Marist College*,
  2019 WL 2371713 (S.D.N.Y. June 5, 2019) ....................................................14, 17

*Jablonski v. Special Counsel, Inc.*,
  2017 WL 4342120 (S.D.N.Y. Sept. 28, 2017) ........................................................13

*James v. Newsweek*,
  1999 WL 796173 (S.D.N.Y. Sept. 30, 1999), *aff'd*, 213 F.3d 626 (2d Cir. 2000), *cert. denied*,
  531 U.S. 926 (2000) ..............................................................................................18

*Jeanty v. Newburgh Beacon Bus Corp.*,
  2018 WL 6047832 (S.D.N.Y. Nov. 19, 2018) .....................................................8, 17

*Jimienez v. City of New York*,
  605 F. Supp. 2d 485 (S.D.N.Y. 2009) ....................................................................13

*Johnson v. City University of New York*,
  48 F. Supp.3d 572 (S.D.N.Y. 2014) .......................................................................20

*Johnson v. New York Presbyterian Hospital*,
  2001 WL 829868 (S.D.N.Y. 2001), *aff'd*, 55 Fed. Appx 25 (2d Cir. 2003) ............19

*Jones v. City of New York*,
  2015 WL 502227 (E.D.N.Y. Feb. 4, 2015) ...............................................................8

*Kaioshai v. New York City*,
  543 F. App'x 11 (2d Cir. 2013) ..............................................................................15

*Kouassi v. New York City Department of Homeless Services*,
  2017 WL 4342093 (S.D.N.Y. Sept. 25, 2017) ..........................................................6

iv

*Langella v. Mahopac Central School District*,
　　2020 WL 2836760 (S.D.N.Y. May 31, 2020) .........................................................................19

*Littlejohn v. City of New York*,
　　795 F.3d 297 (2d Cir. 2015)........................................................................................5, 16

*Lively v. WAFRA Investment Advisory Group, Inc.*,
　　6 F.4th 293 (2d Cir. 2021) .........................................................................................4, 5

*Lizardo v. Denny's Inc.*,
　　270 F.3d 94 (2d Cir. 2001)..............................................................................................17

*Lynch v. City of New York*,
　　952 F.3d 67 (2d Cir. 2020)...............................................................................................4

*Maqsood v. Bell Security*,
　　2006 U.S. Dist. LEXIS 31388 (S.D.N.Y. May 22, 2006), *aff'd*, 249 Fed. Appx. 229 (2d Cir
　　2007) ...........................................................................................................................10

*Marcus v. Leviton Manufacturing, Co.*,
　　661 F. App'x 29 (2d Cir. 2016) ..........................................................................................5

*Marks v. Nat'l Commc'ns Ass'n, Inc..*,
　　72 F.Supp.2d 322 (S.D.N.Y.1999) ...................................................................................20

*Marro v. Nicholson*,
　　2008 WL 699506 (E.D.N.Y. Mar. 12, 2008) .......................................................................19

*Martin v. City Univ. of New York*,
　　2018 U.S. Dist. LEXIS 208685 (S.D.N.Y. Dec. 11, 2018) ....................................................10

*Melman v. Montefiore Medical Center*,
　　96 A.D.3d 107, 946 N.Y.S.2D 27 (1st Dep't 2012) .............................................................12

*Mercado v. City of New York*,
　　2014 WL 627035 (S.D.N.Y. Feb. 18, 2014).................................................................13, 15

*Mesias v. Cravath, Swaine & Moore LLP*,
　　106 F. Supp. 3d 431 (S.D.N.Y. 2015)...............................................................................10

*Mitchell v. New York City Board of Education*,
　　2022 WL 621956 (S.D.N.Y. 2022)....................................................................................16

*Moore v. City of New York*,
　　2017 WL 35450 (S.D.N.Y. 2017).......................................................................................9

*Moore v. Verizon*,
　　No. 13 Civ. 6467 (RJS), 2016 WL 825001 (S.D.N.Y. Feb. 5, 2016)...........................9, 10, 17

*Nicastro v. Runyon,*
   60 F. Supp. 2d 181 (S.D.N.Y. 1999)..................................................................................19

*O'Reilly v. Consol. Edison,*
   173 F. App'x 20 (2d Cir. 2006) .......................................................................................18

*Ochei v. Mary Manning Walsh Nursing Home Co.,*
   2011 WL 744738 (S.D.N.Y. Mar. 1, 2011) ........................................................................8

*Oshinsky v. New York City Hous. Auth.,*
   2000 WL 218395 (S.D.N.Y. Feb. 23, 2000) ......................................................................6

*Pasha v. William M. Mercer Consulting, Inc.,*
   2004 WL 188088 (S.D.N.Y. 2004)...................................................................................11

*Pathare v. Klein,*
   2008 WL 4210471 (S.D.N.Y. 2008).................................................................................11

*Payne v. Malemathew,*
   2011 WL 3043920 (S.D.N.Y. July 22, 2011) ..................................................................14

*Powell v. Merrick Academy Charter School,*
   2018 WL 113551 (E.D.N.Y. 2018)...................................................................................15

*Pronin v. Raffi Custom Photo Lab., Inc.,*
   383 F. Supp. 2d 628 (S.D.N.Y. 2005)...............................................................................10

*Quinn v. Green Tree Credit Corp.,*
   159 F.3d 759 (2d Cir. 1998).................................................................................................6

*Rikhy v. Amc Computer Corp.,*
   No. 01 Civ. 7007, 2003 WL 1618529 (S.D.N.Y. Mar. 28, 2003), aff'd 95 Fed. Appx 388 (2d
   Cir. 2004) ..........................................................................................................................17

*Rosa v. Alverez,*
   2012 WL 651630 (S.D.N.Y. Feb. 28, 2012).....................................................................13

*Rumala v. N.Y.C. Transit Auth.,*
   2005 WL 2076596 (E.D.N.Y. 2005).................................................................................12

*Saliba v. Five Towns College,*
   991 F. Supp. 2d 449 (E.D.N.Y. 2014) ..............................................................................22

*Santiago v. Axis Specialty U.S. Services, Inc.,*
   2021 WL 639527 (S.D.N.Y. 2021)...................................................................................22

*Shah v. New York State Department of Civil Service,*
   1997 WL 769565 (S.D.N.Y. 1997)...................................................................................12

vi

*Soloviev v. Goldstein*,
    104 F. Supp. 3d 232 (E.D.N.Y. 2015) ...............................................................8, 10

*Stern v. State Univ. of New York*,
    2018 U.S. Dist. LEXIS 173054 (E.D.N.Y. Sept. 30, 2018)......................................10

*Texas Dep't of Community Affairs v. Burdine*,
    450 U.S. 248 (1981)..................................................................................................23

*Timmer v. City University of New York*,
    2021 WL 3603465 (E.D.N.Y. 2021)........................................................................16

*Tiu-Malabanan v. University of Rochester*,
    2008 WL 788637 (W.D.N.Y. 2008) .........................................................................19

*Toussaint v. City of New York*,
    2020 WL 3978317 (S.D.N.Y. June 29, 2020) .........................................................13

*University of Texas Southwestern Medical Center v. Nassar*,
    133 S. Ct. 2517 (2013)..............................................................................................21

*Vega v. Hempstead Union Free School District*,
    801 F.3d 72 (2d Cir. 2015).........................................................................................5

*Village of Freeport v. Barrella*,
    814 F.3d 594 (2d Cir. 2016)......................................................................................16

*White v. Andy Frain Servs., Inc.*,
    629 F. App'x 131 (2d Cir. 2015) ..............................................................................10

*Williams v. Calderoni*,
    No. 11-CV-3020, 2012 WL 691832 (S.D.N.Y. 2012), *aff'd*, 529 F. App'x 89 (2d Cir. 2013)
    .................................................................................................................................17

*Williams v. Victoria's Secret*,
    2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017) ........................................................13

*Williams v. Westchester Medical Center*,
    2022 WL 4485298 (S.D.N.Y. 2022)........................................................................8, 9

*Wong v. Kings County District Attorney's Office*,
    2004 WL 692165 (E.D.N.Y. 2004)...........................................................................11

*Zucker v. Five Towns College*,
    2010 WL 3310698 (E.D.N.Y. Aug. 18, 2010).................................................14, 15

## **PRELIMINARY STATEMENT**

As set forth in detail below, this case undermines rather than advances the laudable goals of the anti-discrimination laws.  Plaintiff Arthur Eliav served as an in-house counsel at Roosevelt Island Operating Corporation (RIOC). He was passed over for promotion because his performance did not warrant a promotion.  He was terminated because of poor performance and gross insubordination.

In challenging RIOC's decisions, Mr. Eliav employs the judicially disfavored scattershot approach to pleading.  He claims that that he was retaliated against in late November 2021 for testifying in a deposition five (5) years earlier, retaliated against for reporting corruption, discriminated against because he is a specific denomination of Judaism (Orthodox), and terminated as part of a systemic elimination of non-African-American employees from positions of authority at RIOC.  Most of his Complaint is focused on alleged discriminatory/retaliatory failure to promote claims that are long since time-barred, entirely conclusory, and, in any event, involve decision-makers other than the individually named defendants.

Only two incidents in the Complaint are timely.  The first is Plaintiff's allegation that in November 2021, RIOC intentionally created job criteria for the position of Deputy General Counsel that were designed to exclude him from being qualified.   Plaintiff alleges that RIOC's motivation for creating what he deems to be unreasonable qualifications, e.g., trial experience, was to retaliate against him because five (5) years earlier he testified in a deposition in a civil case against RIOC.   Dispositively, however, the Complaint fails to allege that the decision-makers with respect to the November 2021 promotion were aware that Mr. Eliav testified in a deposition in 2017 and what he testified about.

Plaintiff also alleges that the trial experience requirement for the Deputy Counsel position was intended to exclude him because he is an Orthodox Jew.   At the same time, however, he alleges that another in-house counsel who is not alleged to be an Orthodox Jew was also excluded.

There are quite literally zero allegations in the Complaint tying the decision with respect to qualifications for the Deputy Counsel position -- made by defendant Robinson -- to Plaintiff's religion or ethnicity.   Instead, Plaintiff argues that the criteria was skewed to make Markus Sztejnberg eligible.   According to the Complaint, Mr. Sztejnberg is Jewish, but apparently not an Orthodox Jew.   The Complaint surmises – without any facts to make it plausible – that the criteria for the Deputy Counsel position were rigged so that a Jewish attorney could be appointed instead of an Orthodox in-house Jewish attorney.  The pleading requirements set forth by the Supreme Court do not allow for such leaps in logic unmoored to well-pled facts.

Plaintiff next argues that he was terminated in retaliation for his five-year-old deposition testimony and because on November 29, 2021 (two days before his termination) he complained that the selection process for the Deputy Counsel was corrupt.  Plaintiff adds that his termination was also because he is Jewish.

Plaintiff's claims with respect to his termination fail as a matter of law.  His five-year old testimony cannot form the basis for a retaliation claim because it is too remote to establish a causal connection and, as previously noted, he does not allege that the decision-makers in 2021 were even aware of it.  The November 29, 2001 email (Miller Aff. at Exhibit A) does not constitute protected activity because it mentions nothing about discrimination.  Further, that

email cannot be the but-for cause for Plaintiff's termination, because Plaintiff alleges multiple other reasons for his termination.

Finally, Plaintiff has not pled any facts making it plausible that he was terminated because he is Jewish.   Under Supreme Court and Second Circuit precedent, the conclusory allegation of discrimination is insufficient.

## FACTS

The pertinent facts, taken as true for the purposes of this motion, are as follows.  Plaintiff is an Orthodox Jewish male who previously served as in-house counsel for RIOC (Complaint at ¶ 6).

In 2017, Plaintiff gave deposition testimony in a federal civil rights case brought by former General Counsel, Donald Lewis, against RIOC (Complaint at ¶ 6).   The Complaint does not allege that the individual defendants/relevant decision-makers in 2021 were aware of that Plaintiff had testified or the nature of the testimony Plaintiff had given five years earlier.

On November 24, 2021, Defendant Robinson informed Plaintiff and then Assistant General Counsel Lada Stasko ("Stasko") that RIOC was adding a new position, Deputy General Counsel, and Plaintiff was invited by Robinson to apply for that position (Complaint at ¶37).    The Complaint alleges that the job description for Deputy General Counsel was drafted to require trial experience for the purpose of excluding Plaintiff (Complaint at ¶¶38-39).  The Complaint does not identify who drafted the job description, but it does admit that Stasko, who also had no trial experience was also not qualified for the Deputy General Counsel position.

The Deputy General Counsel position was given to Markus Sztejnberg, who had previously served as Special Counsel to RIOC for Ethics, Risk and Compliance and had the requisite trial

experience (Complaint at ¶40).  Mr. Sztejnberg is Jewish, albeit a non-Orthodox Jew (Complaint at ¶57).

On November 29, 2021, Plaintiff emailed Robinson, copying Sharpe, Haynes, and Stasko, complaining about the qualifications required for the Deputy Counsel position (Complaint at ¶ 43. Miller Aff. at Exhibit "A").   His email did not allege he was being discriminated against because Plaintiff is an Orthodox Jew or because he is White.  Plaintiff sent a follow-up email complaining that the selection process for general counsel had been "rigged" (Complaint at ¶44. Miller Aff. at Exhibit "B").   Although the Complaint alleges that the follow-up email "alludes" to prior discrimination based on religion and ethnicity, in fact it makes no mention whatsoever of discrimination.

Plaintiff alleges that 48 hours after his follow-up email, he was fired because Haynes was angry about the two emails of November 29, 2021 (Complaint at ¶45).   The Complaint alleges that Plaintiff was terminated as part of systemic elimination of non-African American employees from positions of authority at RIOC (Complaint at ¶46). The Complaint does not identify any other non-African American whose position was eliminated by the same decision-makers, nor does the Complaint attempt to reconcile the conclusory averment of eliminating non-African Americans with the hiring of Markus Sztejnberg, who is Caucasian.

## LEGAL STANDARD

According to Rule 12(c), a party can move for judgment on the pleadings after the pleadings are closed, which includes both the complaint and the answer to the complaint. Fed. R. Civ. P. 7(a); *Lively v. WAFRA Investment Advisory Group, Inc.*, 6 F.4th 293, 301 (2d Cir. 2021). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a rule 12(b)(6) motion for failure to state a claim." *Lively*, 6 F.4th at 301 (citing *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)). Thus, "[t]o survive a Rule 12(c)

4

motion, the plaintiff's complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Lively,* 6 F.4th at 30; see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Twombly*, 550 U.S. at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In a discrimination case, a plaintiff must plead facts that give "plausible support to a minimal inference" of discriminatory causality.  *Littlejohn v. City of New York*, 795 F.3d 297, 310-11 (2d Cir. 2015).  This requires the plaintiff to "supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of 'conceivable' to the plausible."' *Marcus v. Leviton Manufacturing, Co*., 661 F. App'x 29, 32 (2d Cir. 2016) *quoting Vega v. Hempstead Union Free School District*, 801 F.3d 72, 87 (2d Cir. 2015).

In ruling on a motion to dismiss, a complaint is "deemed to include ... any statements or documents incorporated in it by reference." *Cortec Indus., Inc,. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991) (citation omitted).

## ARGUMENT

### POINT I

### MANY OF PLAINTIFF'S CLAIMS ARE TIME-BARRED AND SHOULD BE DISMISSED

In New York, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days after the allegedly discriminatory practice to preserve his/her right to bring a lawsuit. *Ford v. Bernard Fineson Development Center*, 81 F.3d 304, 307

(2d Cir. 1996); *Kouassi v. New York City Department of Homeless Services*, 2017 WL 4342093 (S.D.N.Y. Sept. 25, 2017).

The anti-discrimination laws preclude a plaintiff from recovering "for discrete acts of discrimination which occur outside of this statutory time period, regardless of whether such acts are related to other discriminatory acts alleged in timely filed charges." *Goins v. Finger Lakes Serv. Grp.*, 2014 WL 204207, at *1 (W.D.N.Y. Jan. 17, 2014). "A plaintiff's failure to file a timely charge with the EEOC renders a claim time-barred." *Oshinsky v. New York City Hous. Auth.,* 2000 WL 218395, at *7 (S.D.N.Y. Feb. 23, 2000) (citing *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 765 (2d Cir. 1998)).

Plaintiff alleges that he filed a charge of discrimination with the EEOC on February 25, 2022 (Amended Complaint ¶ 10). Three hundred days prior to that date is May 1, 2021. Accordingly, any alleged conduct taking place prior to May 1, 2021 falls outside of the limitations period. Plaintiff's only surviving claims are the failure to promote claim arising out of the November 2021 Deputy General Counsel position and the November 2021 termination of his employment.

## POINT II

## PLAINTIFF'S DISCRIMINATION CLAIMS FAIL AS A MATTER OF LAW

### A. Plaintiff's failure to promote claim fails as a matter of law

#### 1. The allegations in the Complaint rest on a false syllogism

Plaintiff alleges that in November 2021 RIOC rigged the selection process for the position of Deputy General Counsel by requiring trial experience, knowing that Plaintiff did not have such experience. According to the Complaint, RIOC created this façade so that it could hire a specific

White Jewish attorney for the position, albeit one who is not Orthodox.[1]

Plaintiff offers no facts to support his claim that he was the victim of discrimination. Merely stating that one is a member of a protected class – **as is quite literally everyone** – is not enough to sustain a serious allegation that effectively accuses someone of being of truly repugnant and immoral character. In this regard, the Second Circuit has held that, "[r]acial or religious discrimination is odious but a frivolous or malicious charge of such conduct … is at least equally obnoxious." *Carrion v. Yeshiva University*, 535 F.2d 722 (2d Cir. 1976).

Instead of making factual allegations from which discriminatory intent could be inferred, the Complaint relies on an unfortunately all too common legal *non sequitur*. As described by one court when it dismissed an employee's race discrimination claim against her former employer:

> This is a variation on a common (and patently defective) technique in cases brought under federal and local antidiscrimination statutes: "I am (fill in the protected class of which the plaintiff is a member); something bad happened to me at work; therefore the bad thing happened because I am (fill in the protected class)." As the Second Circuit and other courts of appeal have repeatedly stated, this is a false syllogism, one that does not support any inference of discrimination…

> Where there is no reason to suspect that an employer's actions had anything to do with membership in a protected class, other than plaintiff's bald assertion that she was a member of such a class, and the people who made decisions about her employment were not, no claim is stated.

> \*\*\*

> To protect employers from precisely this sort of untenable situation, naked assertions by plaintiff that some protected demographic factor motivated an employment decision, without a fact-specific allegation of a causal link between defendant's conduct

---

[1] The Complaint does not identify Mr. Sztejnberg's specific denomination of Judaism.

and the plaintiff's membership in a protected class, are simply too
conclusory to withstand a motion to dismiss.

*Ochei v. Mary Manning Walsh Nursing Home Co.*, 2011 WL 744738, at *2-*3 (S.D.N.Y. Mar. 1,

2011). *Accord  Diaz v Poly Prep Day School*, 2022 WL 2803259 (E.D.N.Y. 2022) ("Plaintiff's

complaint alleges nothing other than the familiar, false syllogism that she is a member of a minority

group; she doesn't like the way she was treated at work; and because she is a member of a minority

group, that treatment must have been based on her race"); *Williams v. Westchester Medical Center*,

2022 WL 4485298, at *8 (S.D.N.Y. 2022) (grating 12(b) (6) motion where complaint rested on

false syllogism of race discrimination*); Boncoeur  v. Haverstraw-Stony Point Central School

District*, 2022 WL 845770, at *8 (S.D.N.Y. 2022) (same),  *Freckleton v. Amulnz, NY LLLC*, 2022

WL 4644673 (E.D.N.Y. 2022) (same);  *see also Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 249

(E.D.N.Y. 2015) (granting motion to dismiss plaintiff's discrimination claim where the complaint

alleged "no connection between his termination and his gender, race, or national origin" and has

"done no more than point to various ways in which [he] feels he was mistreated and argue that it

must have been because of his gender, race, and national origin"); *See also Jones v. City of New

York*, 2015 WL 502227, at *7 (E.D.N.Y. Feb. 4, 2015) ("In sum, Jones' national origin claim

amounts to little more than a flawed syllogism that because she is Haitian and something

unfortunate happened to her, the two must be linked.  That falls well short of the pleading bar.");

*Jeanty v. Newburgh Beacon Bus Corp.*, 2018 WL 6047832 (S.D.N.Y. Nov. 19, 2018) (dismissing

race, color, and sex discrimination claims.); *Glascoe v. Solomon*, 2020 WL 1272120 (S.D.N.Y.

Mar. 17, 2020) (granting 12(b)(6) motion where claims of race, religious, and age discrimination

were conclusory).

   Plaintiff's discrimination claims should be dismissed for lack of any well-pled facts

making it plausible that he was not given the Deputy General Counsel position because of his

religion/national origin. *See Moore v. Verizon*, No. 13 Civ. 6467 (RJS), 2016 WL 825001, at *7 (S.D.N.Y. Feb. 5, 2016) (dismissing plaintiff's discrimination claims under Title VII, the NYSHRL, and the NYCHRL where plaintiff made a "bald assertion," without any supporting facts, that she was subjected to discrimination and holding that "even under NYCHRL's more liberal standard," the plaintiff failed to plead facts giving rise to an inference of discrimination.); *Moore v. City of New York*, 2017 WL 35450 (S.D.N.Y. 2017) (same), *adopted* 2017 WL 1064714 (S.D.N.Y. 2017); *Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002) ("bare allegation [that defendant was motivated by plaintiff's protected membership], without any facts alleged in support, is insufficient to state a claim for intentional discrimination.")

### 2. Stray Remarks from non-decision makers years earlier do not salvage the claims

The Complaint alleges that Former General Counsel Jacqueline Flug, who left RIOC in February 2019, complained to Plaintiff that because she is female she would not count toward a quorum (minyan) for communal prayer and that her mother would not shop at Orthodox Jewish stores because Orthodox Jews do not accord women the same rights as men (Complaint at ¶57). Ms. Flug was not the decision-maker regarding the Deputy General Counsel position more than two (2) years later in November 2021. Consequently, any alleged comments she made cannot make Plaintiff's claims plausible. *See Ahmad v. White Plains City School District*, 2019 WL 3202747, at *5 (S.D.N.Y. 2019) (collecting cases) ("There are no allegations from which the Court could infer that anyone involved in the decision to terminate Plaintiff's employment was even aware of these comments. Courts in the Second Circuit routinely dismiss discrimination claims where the only allegations are stray remarks by non-decision-makers wholly unconnected to the adverse employment action underlying the claims."); *Williams v. Westchester Medical Center*, 2022 WL 4485298, at *8 (S.D.N.Y. 2022) (grating 12(b) (6) motion; stray remarks made by non-

decisionmaker have no bearing on the case); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 249 (E.D.N.Y. 2015) (granting motion to dismiss where the plaintiff "fails to allege that any of the named [i]ndividual ... [d]efendants or anyone with control over the decision to fire [the plaintiff] made [the alleged discriminatory] comments"); *Martin v. City Univ. of New York*, 2018 U.S. Dist. LEXIS 208685, at *24-*26 (S.D.N.Y. Dec. 11, 2018) *citing Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) ("Plaintiff does not sufficiently allege a connection between either of [her supervisor's] comments and her termination.  The first comment was made a year and a half before Plaintiff was fired, and the second was made more than three months before Plaintiff's termination." (collecting cases)); *see also Moore v. Verizon*, 2016 U.S. Dist. LEXIS 16201, 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) ("[Defendant's] alleged remarks regarding Plaintiff's age, [which] occurred at least months before Plaintiff's first suspension and nearly a year prior to her termination ... are non-actionable stray remarks."). Comments occurring two years ago, as alleged here, are similarly not enough to sustain a discrimination claim.  *See White v. Andy Frain Servs., Inc.*, 629 F. App'x 131, 134 (2d Cir. 2015) (summary order) ("[S]everal off-color comments over the course of a year and a half about [Plaintiff] being black and Jewish ... were no more than stray remarks."); *see generally Stern v. State Univ. of New York*, 2018 U.S. Dist. LEXIS 173054 at *14 (E.D.N.Y. Sept. 30, 2018) (collecting cases); *Nidzon v. Konica Minolta Bus. Sols.*, USA, Inc., 752 F. Supp. 2d 336, 352 (S.D.N.Y. 2010) ("The [thirteen-month] lapse in time between the comment and the adverse action is too great to infer a discriminatory motive, and the comment therefore qualifies as a stray remark."); *see also Pronin v. Raffi Custom Photo Lab., Inc.*, 383 F. Supp. 2d 628, 638 (S.D.N.Y. 2005) (finding that the comment, "Maybe you are too old to be working here," which made six to eight weeks before Plaintiff was fired, was a non-probative stray remark); *Maqsood v. Bell Security*, 2006 U.S. Dist.

LEXIS 31388, at *18 (S.D.N.Y. May 22, 2006) (Plaintiff "admits that he continued to work for Bell for two years after these conversations allegedly took place under the same terms and conditions of employment."), *aff'd*, 249 Fed. Appx. 229 (2d Cir 2007).

### 3. Plaintiff has failed to adequately plead the qualifications for the position were discriminatory or that his qualifications were superior to the selected candidate

Plaintiff initially challenges the selection criteria for the Deputy General Counsel position. According to him, RIOC is simply wrong about what qualifications are necessary for a Deputy General Counsel. It is, however, axiomatic that "employers, not the court, determine what qualifications are necessary." *Abraham v. New York City Education*, 398 Fed. Appx. 633 (2d Cir. 2010). "Setting minimum qualifications for a job title is typically a matter left to an employer's discretion, not one for judicial involvement." *Pathare v. Klein*, 2008 WL 4210471, at *6 (S.D.N.Y. 2008). Put another way, Plaintiff has no legal right to dictate the qualifications for the promotion he wanted, and he cannot compel the Court to do it for him. *Wong v. Kings County District Attorney's Office*, 2004 WL 692165, at *6 (E.D.N.Y. 2004) ("But it is not the province of courts to second-guess the nondiscriminatory business decisions of employers.") *citing Pasha v. William M. Mercer Consulting, Inc*., 2004 WL 188088, at * 9 (S.D.N.Y. 2004) ("Courts must not second-case [the employer's] decision making process since [e]mployers, not the courts, have the requisite experience in setting employment qualifications.") (internal quotations and citations omitted).

It is also well-settled that employers have discretion to choose candidates whom they deem to be most qualified. *See, e.g.*, *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (holding courts "must respect the employer's unfettered discretion to choose among qualified candidates" and must not substitute their judgment for that of the employer);

11

*Buompane v. Citibank, N.A.*, 2002 WL 603036, *14 (S.D.N.Y. 2002) ("[A] court may not 'act as a super personnel department that second guesses employers' business judgments,' so long as those judgments … are not made with discriminatory intent."); *Rumala v. N.Y.C. Transit Auth.*, 2005 WL 2076596, *14 (E.D.N.Y. 2005) ("Under the law … it is the perception of the decision maker, and not that of plaintiff, which is relevant. Simply because plaintiff's perceptions of his own qualifications differ from those of his employer does not entitle us to delve into the question of which portrayal is the correct one [because this Court] does not sit as a super-personnel department that reexamines an entity's business decisions." (alteration in original)). In order to convince a court to review the qualifications, the plaintiff must prove that he has "credentials … so superior … that no 'reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Byrnie*, 243 F.3d at 103; *Accord Mosby v. William*, WL 2009 10701906 (2d Cir. 2009)

Any employer is within its right to have in-house counsel with trial experience.  The fact that Plaintiff disagreed with this criterion is insufficient as a matter of law to support a claim of discrimination.   In this regard, the anti-discrimination statutes were meant to redress and eradicate discrimination; they were not meant to challenge the wisdom of an employer's business decisions to set minimal standards for a position.  *See Melman v. Montefiore Medical Center*, 96 A.D.3d 107, 946 N.Y.S.2D 27 (1st Dep't 2012) (courts "should not sit as super-personnel departments that reexamine an entity's business decisions") (internal citations and quotations omitted); *Shah v. New York State Department of Civil Service*, 1997 WL 769565 (S.D.N.Y. 1997) (rejecting challenge by plaintiff to requirement that candidate have prior management/supervisory experience); *Crews v. Trs. of Columbia University*, 452 F. Supp. 2d 504, 526 (S.D.N.Y. 2006) ("courts do not second-guess the reasonableness of the employer's

criteria for employment…"); *Jimienez v. City of New York*, 605 F. Supp. 2d 485, 524-25 (S.D.N.Y. 2009) ("employers enjoy unfettered discretion to choose among qualified candidates and to decide which types of credentials are of the most importance for a particular job.").

Additionally, other than a conclusory averment that Plaintiff is more qualified, he does not actually plead what his actual qualifications are as compared to Mr. Sztejnberg.  His failure to promote claim, consequently, is simply not plausible.  *See Toussaint v. City of New York*, 2020 WL 3978317 (S.D.N.Y. June 29, 2020) (granting 12(b)(6) motion in failure to promote claim where plaintiff failed to plead the qualifications of the promoted candidate); *Williams v. Victoria's Secret*, 2017 WL 1162908 (S.D.N.Y. Mar. 28, 2017) (dismissing discrimination claims where complaint provided no details as to the experience or qualifications of plaintiff's replacement); *see also Committee v. Yen*, 2018 WL 2108193 (N.D.N.Y. May 7, 2018) (dismissing failure to hire claim where plaintiff failed to plead qualifications of other candidates); *Rosa v. Alverez*, 2012 WL 651630 (S.D.N.Y. Feb. 28, 2012) (holding that "[w]hile [the] plaintiff identifies the age range, race and national origin of the woman who was ultimately hired for the. . .position" for which she was not hired, the plaintiff "does not allege facts from which the [c]ourt might reasonably infer that such woman was promoted because of her race, national origin or age (as compared to [the] plaintiff's)"); *Mercado v. City of New York*, 2014 WL 627035, at *2 (S.D.N.Y. Feb. 18, 2014) (dismissing discrimination claims because "the allegations that the other [employees] were 'less qualified' or were promoted due to their race are conclusory and unsupported by facts in the complaint."); *Jablonski v. Special Counsel, Inc.*, 2017 WL 4342120, at *4 (S.D.N.Y. Sept. 28, 2017) (dismissing age discrimination claims where plaintiff "merely asserts that other applicants hired or referred for replacement … were younger and less qualified than her, which is entirely conclusory, naked, and devoid of further factual enhancement, and

thus, not entitled to a presumption that it is true") *cited in Soto v. Marist College*, 2019 WL

2371713 (S.D.N.Y. June 5, 2019) (collecting cases).

Plaintiff likewise cannot create an inference of discrimination because the individual

promoted was a different denomination of Judaism than he.  Because every employee is a member

of multiple protected classes, an employer need not either replace its terminated employees with

clones or promote a clone of a would-be plaintiff to prevail on a motion to dismiss and avoid

discovery costs.  As held by Judge Seybert of the Eastern District:

> Given that employment decisions involve "subjective, individualized assessments," the College could have had dozens of possible reasons for terminating Mr. Zucker, and for chosing [sic] a particular replacement.  So, without actual facts suggesting discriminatory animus, age discrimination is just one "possibility" for the College's actions.  *Iqbal*, 129 S.Ct. at 1949.  And, consequently, allegations that Mr. Zucker performed his job satisfactorily, and that the College then fired him and replaced him with someone younger, by themselves, fail to raise his "right to relief above [a] speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 644, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007).
>
> Second, as Western District of New York Judge David G. Larimer recently reasoned, if such barebones allegations sufficed to state a claim, "then any time an ADEA-covered employer terminated an employee over age forty, the employer would be unable to replace that employee with someone younger [ ] without exposing itself to potential liability for age discrimination." And Defendants similarly argue, correctly noting that "[e]very employee is a member of multiple protected classes."  (Def. Br. At 9.)  Thus, "unless a terminated employee is being replaced by a virtual clone, his/her replacement" will almost certainly "be outside of one of the Plaintiff's protected classes (*e.g.*, could be younger and/or a different gender, race, religion, national origin)." (*Id.*)  The Court agrees with this reasoning.  *And the Court has no desire to abrogate FED. R. CIV. P. 8's gate-keeping function in employment discrimination cases, enabling nearly every fired employee to subject his employer to burdensome, expensive discovery.*

*Zucker v. Five Towns College*, 2010 WL 3310698, at *2 (E.D.N.Y. Aug. 18, 2010) (emphasis

added); *Accord Payne v. Malemathew*, 2011 WL 3043920, at *2, fn 3 (S.D.N.Y. July 22, 2011).

14

As noted in *Zucker*, an employer need not consult a scorecard of protected characteristics to avoid the cost of discovery in an employment case.  *See also Iqbal*, *supra. Mercado v. City of New York*, No. 13-CV-389, 2014 WL 627035, at *2 (S.D.N.Y. Feb. 18, 2014) (dismissing discrimination claims because "the allegations that the other [employees] were 'less qualified' or were promoted due to their race are conclusory and unsupported by any facts in the complaint"); *DuBois v. State of N.Y.*, 966 F. Supp. 144, 147 (N.D.N.Y. 1997) (holding the plaintiff's "conclusory allegations" that she was replaced by a less qualified male could not state a claim where the complaint "fails to provide any detail as to her male replacement's qualifications, whether his duties and benefits were similar to her own, and/or the circumstances under which he succeeded her"); *Fleurentin v. New York City Health and Hospitals*, 2020 WL 42841, at *5 (E.D.N.Y. 2020) (dismissing failure to promote claim  where complaint failed to describe the details of the promoted candidate).

Finally, the failure to promote claim should be dismissed because there is an obvious alternative explanation for the challenged action.  RIOC wanted in-house counsel with trial experience who could supervise outside counsel representing RIOC in trials. Plaintiff simply did not have such experience.  *See Ashcroft v. Iqbal*, 556 U.S. at 682 ("as between that obvious alternative explanation for the [challenged action] and the purposeful, invidious discrimination [plaintiff] asks us to infer, discrimination is not a plausible conclusion"); *Kaioshai v. New York City*, 543 F. App'x 11 (2d Cir. 2013) (affirming dismissal of Title VI claim in part because there was a "more plausible explanation" then the alleged discrimination); *Powell v. Merrick Academy Charter School*, 2018 WL 113551, at *10 (E.D.N.Y. 2018) (dismissing retaliation claim where there was an obvious alternative explanation for the decision to fire plaintiff);  *Accord Ahmad v. White Plains City School District*, 2019 WL 3202747, at *6 (S.D.N.Y. 2019) ("The fact that

Plaintiff identifies a non-discriminatory basis for his termination undermines any potential inference that his termination was based on his race, national origin, or religion.").

Finally, the Complaint suggests that Plaintiff's real quarrel with the selection criteria is that they were designed to recruit Mr. Sztejnberg in particular.   It would hardly be surprising that a public entity such as RIOC that is constantly under scrutiny from the media and self-proclaimed citizen watchdogs would want a lawyer who served as Special Counsel for Ethics, Risk and Compliance as in-house counsel.  But even if it could be said that the recruitment of Mr. Sztejnberg was based on some pre-existing personal relationship, that would not be unlawful. *See Fleurentin v. New York City Health and Hospitals*, 2020 WL 42841, at *5 (E.D.N.Y. 2020) ("Failure to promote claims are meant to address workplace discrimination, not nepotism."); *Village of Freeport v. Barrella*, 814 F.3d 594, 613 (2d Cir. 2016) (the antidiscrimination laws do not prohibit promotions based on favoritism, personal relationships, and political gain).

### B.  The Complaint Fails to State A Claim For Discriminatory Discharge

Under the cases cited in Point II, (A)(1) above, Plaintiff's claim that he was terminated because he is an Orthodox Jew is too conclusory to survive a 12(b)(6) motion. *See Bentley Jr., v. Mobil Gas Station*, 599 Fed. Appx. 395, 396 (2d Cir. 2015)("A plaintiff's naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss."); *Mitchell v. New York City Board of Education*, 2022 WL 621956, at *5 (S.D.N.Y. 2022)("And while Mitchell asserts that he "was targeted and discriminated against by Principal Daisy Fontanez ... based on being an older, African American male," and that he "believe[s] [he] ha[s] been the victim of age, race, and gender discrimination by the Wadleigh administration at DOE" (Cmplt. (Dkt. No. 2) at 8 ¶ 3), such conclusory statements – unsupported by facts giving rise to an inference of discriminatory intent – are insufficient to establish a *prima facie* case of discrimination.") *citing Littlejohn*, *supra. See also Timmer v. City University of New York*, 2021

WL 3603465, at *7 (E.D.N.Y. 2021) ("[Plaintiff] simply concludes that his mistreatment by Hispanic supervisors are racially discriminatory because he is Black. 'That type of reasoning … is more a legal conclusion which this Court is not required to credit: it is a logically-flawed statement.'") *quoting Forde v. Empire State College*, 2011 WL 4376499, at *3 (S.D.N.Y. 2011); *Jeanty v. Newburgh Beacon Bus Corp.*, 2018 WL 6047832, at *8 (S.D.N.Y. 2018) *citing Lizardo v. Denny's Inc.*, 270 F.3d 94, 104 (2d Cir. 2001)(Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to race. This is not sufficient."); *see also Moore v. Verizon*, 2016 WL 825001, at *7 (S.D.N.Y. 2016) (grating 12(b) motion dismissing discrimination claims); *Williams v. Calderoni*, No. 11-CV-3020, 2012 WL 691832, at *7 (S.D.N.Y. 2012) ("[I]t is hornbook law that the mere fact that something bad happens to a member of a particular racial group does not, without more, establish that it happened *because* the person is a member of that racial group."), *aff'd*, 529 F. App'x 89 (2d Cir. 2013).

Plaintiff's claim fails on the additional ground that it is belied by other allegations in the Complaint and documents incorporated by reference. *See Soto v. Marist College*, 2019 WL 2371713, at *6 (S.D.N.Y. 2019)("Plaintiff's claim of race-based discrimination is further undermined by the fact that the Amended Complaint specifically identifies Defendants' stated reason for firing Plaintiff, and Plaintiff pleads no facts explaining why that reason was pretextual.").  Paragraph 45 of the Complaint alleges that Plaintiff was terminated because Haynes "was angry" about the two November 29, 2021 emails from Plaintiff.   Those emails are replete with unprofessional language and evince patent insubordination by Plaintiff directed at Haynes. *See Rikhy v. Amc Computer Corp.,* No. 01 Civ. 7007, 2003 WL 1618529, at *4  (S.D.N.Y. Mar. 28, 2003), aff'd 95 Fed. Appx 388 (2d Cir. 2004) (stating that "[i]subordination and threatening behavior both constitute legitimate nondiscriminatory reasons for discharge in this Circuit");

*Hartley v. Rubio*, 785 F. Supp. 2d 165, 179 (S.D.N.Y. 2011) (finding "that defendants have met their burden of articulating a legitimate, nondiscriminatory reason for reassigning and terminating [plaintiff]" because defendants asserted the plaintiff "acted in an insubordinate fashion" and "was unprofessional and disruptive").

Finally, Plaintiff's allegation -- that he was terminated as part of systemic elimination of non-African American employees from positions of authority at RIOC (Complaint at ¶46) -- does not make his claim plausible. *See Hussey v. New State Department of Attorney General*, 933 F. Supp. 2d 399, 408) (E.D.N.Y. 2013) (dismissing failure to promote claim and finding that Plaintiff's allegation -- that she was not promoted "as the result of defendants' individual policy and custom of promoting African American line attorneys" -- insufficient).

### POINT III THE RETALIATION CLAIM FAILS AS A MATTER OF LAW

#### A. The five-year gap between Plaintiff's deposition testimony and the adverse actions is too long

Plaintiff alleges that he was denied promotion and terminated because five years ago he gave deposition testimony in another employee's discrimination case.  This gap is too long as a matter of law to create the requisite "but-for" casual connection. *See, e.g.*, *O'Reilly v. Consol. Edison*, 173 F. App'x 20 (2d Cir. 2006) (three month gap insufficient); *Hollander v. Am. Cynamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (same); *Donlon v. Group Health Inc.*, 2001 WL 111220, at *3 (S.D.N.Y. Feb. 8, 2001) ("Neither is the lapse of four months … enough to imply a causal connection."); *Cobian v. City of New York*, 2000 WL 1782744 (S.D.N.Y. Dec. 6, 2000) (plaintiff failed to establish causal connection between protected activity and adverse employment action which took place after four month lag); *James v. Newsweek*, 1999 WL 796173, at *15 (S.D.N.Y. Sept. 30, 1999) (no causation where "there was at least a four-month gap between the protected activity and the adverse actions"), *aff'd*, 213 F.3d 626 (2d Cir. 2000), *cert. denied*, 531 U.S. 926

(2000); *Nicastro v. Runyon*, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999) ("claims of retaliation are routinely dismissed when as few as three months elapse between the protected activity and the alleged act of retaliation"); *Marro v. Nicholson*, 2008 WL 699506, at *7 (E.D.N.Y. Mar. 12, 2008) (collecting cases:  "Although the Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship … *district courts have generally concluded that a passage of two months between the protected activity and the adverse employment action seems to be the dividing line.*") (emphasis added; internal quotations omitted).  *See also Langella v. Mahopac Central School District*, 2020 WL 2836760, at *11 (S.D.N.Y. May 31, 2020) (collecting cases).

Plaintiff was an at-will employee who could have been terminated at any time.  Plainly, if RIOC harbored retaliatory animus toward Plaintiff for previous deposition testimony it would not have waited five years to terminate him.

Further, Plaintiff does not allege that the decision-makers in November 2021 were even aware of his five-year old deposition testimony five years earlier. *See Duff v. Pristine Services, Inc.*, 2021 WK 66391, at 9 (S.D.N.Y. 2021) (dismissing retaliation claim where complaint failed to allege that decision-maker was aware of the protected activity); *Johnson v. New York Presbyterian Hospital*, 2001 WL 829868 (S.D.N.Y. 2001) (granting 12(b)(6) motion where plaintiff failed to adequately allege that actual decision-makers were aware of the protected activity), *aff'd*, 55 Fed. Appx 25 (2d Cir. 2003); *Tiu-Malabanan v. University of Rochester*, 2008 WL 788637 (W.D.N.Y. 2008)(granting 12(b)(6) motion dismissing retaliation claims; while complaint alleged that plaintiff complained to the "appropriate management official," it failed to allege when the complaint was made and whether the decision-maker was actually aware of the complaint).

**B.  Plaintiff's November 29, 2021 emails do not constitute protected activity**

Nowhere in Plaintiff's November 29, 2021 emails does Plaintiff allege that he was being denied promotion due to discrimination. Instead, Plaintiff complained that the qualifications for the Deputy Counsel position were generically unfair. *See Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.3d 775, 781 (2d Cir. 1991) ("The onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally."). Accordingly, Plaintiff's retaliation claims should be dismissed. *See Fattoruso v. Hilton Grand Vacations Co., LLC, 525 Fed.Appx. 26, 28 (2d Cir. 2013)* (dismissing the plaintiff's NYCHRL retaliation claim and stating the plaintiff's "belief that he was being treated 'unfairly' [does not] transform his complaints to [the employer] into charges over unlawful discrimination."); *Marks v. Nat'l Commc'ns Ass'n, Inc..,* 72 F.Supp.2d 322, 337 (S.D.N.Y.1999) (plaintiff who protested to employer that failure to promote her despite her qualifications was unfair but never suggested gender-bias as motivation did not engage in protected activity); *Green v. Mount Sinai Health System*, 2019 WL 4392691, at *6 (S.D.N.Y. 2019) ("Here, however, Plaintiff's complaints are utterly devoid of any reference to race, gender, or any other protected characteristic. The complaints, therefore, do not reflect a reasonable belief that the challenged actions violated the discrimination laws. Because Mount Sinai could not possibly have been on notice that Plaintiff was complaining about violations of the anti-discrimination laws, as opposed to unfair treatment generally, as a matter of law, none of these complaints is protected activity."); aff'd, 826 Fed. Appx. 124 (2d Cir. 2020); *Johnson v. City University of New York*, 48 F. Supp.3d 572, 576 (S.D.N.Y. 2014) (complaint of boss being bullying unrelated to plaintiff's

membership in a protected class did not constitute protected activity."); *Antione v. State University of New York, Downstate Medical Center*, 2021 WL 6101468 (2d. Cir, 2021) (affirming dismissal of retaliation complaint where the alleged protected activity consisted of a complaint of an alleged violation of SUNY policy.  Plaintiff did not complain that he was being discriminated against because of his race).

Finally, the belligerent and insubordinate tone and substance of Plaintiff's emails in which he accuses his supervisors of "rigging" the promotion process renders them unprotected.   "The anti-retaliation provision of [the civil rights statutes are] not a license for offensive, disruptive, rude, or demeaning behavior. Referring to one's supervisors and employers as "corrupt," "cowardly," "cowards," and "the lowest scum of the planet" is not protected activity; "making charges, testifying, assisting, or participating in enforcement proceedings"" *Finn v. New York State Off. of Mental Health-Rockland Psychiatric Ctr.*, No. 08-cv-5142, 2011 WL 4639827, at *18, 2011 U.S. Dist. LEXIS 115950 (S.D.N.Y. Oct. 6, 2011), *aff'd*, 489 F. App'x 513 (2d Cir. 2012).

### C.  Plaintiff cannot establish that his protected activity was the but-for cause for the denial of his promotion and termination.

Plaintiff's retaliation claim is subject to the but-for causation standard set forth by the United States Supreme Court in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013).  *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 219 n. 25 (E.D.N.Y. 2014).

Plaintiff offers a wide array of reasons for the adverse actions – he is Jewish, he is a whistleblower exposing corruption, his prior testimony, RIOC was trying to rid itself of non-African Americans. Because under Mr. Eliav's own pleading, the alleged exercise of his protected rights was *not* the "but for" cause of any adverse action against him (he claims religious discrimination and whistleblower animus here), his retaliation claims should be dismissed.  *See*

*Blanco v. Brogan*, 620 F. Supp. 2d 546, 556 (S.D.N.Y. 2009) (dismissing retaliation claim where Plaintiff testified that she was not promoted because of her gender and cronyism); *Hu v. UGL Servs. Unicco Operations Co.*, 2014 U.S. Dist. LEXIS 145552, at *18 (S.D.N.Y. Oct. 9, 2014) (dismissing discrimination claim holding "[plaintiff] cannot demonstrate that discrimination was the 'but-for' cause of his discharge" in light of his "conjecture[] that there were multiple reasons for his discharge" because such "admission undermines any claim that Plaintiff's age was the "but-for" cause of his discharge"); *Saliba v. Five Towns College*, 991 F. Supp. 2d 449, 451-452 (E.D.N.Y. 2014) (granting 12(b)(6) motion dismissing Title VII retaliation claim where plaintiff alleged that her discharge was for multiple reasons thereby precluding but-for causation).

## POINT IV

## THE INDIVIDUAL DEFENDANTS CANNOT BE PERSONALLY LIABLE

Plaintiffs names the individual defendants personally without attributing any well-pled discriminatory conduct towards them. Instead, he labels them discriminators with one broad stroke of the keyword. In any event, individuals cannot be liable under the State or City law unless the employer has been found to be liable. As held by the Court in *Santiago v. Axis Specialty U.S. Services, Inc.*, 2021 WL 639527, at *13 (S.D.N.Y. 2021):

> However, "liability under the [NYS]HRL and the NYCHRL must first be established as to the employer/principal" before an individual may be held liable under either law. Sowemimo v. D.A.O.R. Sec., Inc., 43 F. Supp. 2d 477, 490 (S.D.N.Y. 1999); see also Maynard v. Montefiore Med. Ctr., 2021 WL 396700, at *15 (S.D.N.Y. Feb. 4, 2021) ("[Individual liability under the NYSHRL] liability is solely 'derivative,' i.e., the employer must be liable as a principal ...") (quoting Osborne v. Moody's Invs. Serv., Inc., 2018 WL 1441392, at *7 (S.D.N.Y. Mar. 22, 2018)). And, as discussed above, Plaintiff has not adequately shown that AXIS was liable under the NYSHRL and NYCHRL. Accordingly, her state and city law claims against the Individual Defendants must fail.

## **CONCLUSION**

Plaintiff's claim, like those advanced in the many cases cited herein, rests on a mistaken belief that the anti-discrimination laws deprive an employer of the right to choose the criteria of a newly created position and then select a qualified individual.  The anti-discrimination laws do not require an employer to modify criteria for promotion to suit the demands of current employees. The United States Supreme Court, has expressly rejected the argument advanced by Plaintiff here:

> Title VII, however, does not demand that an employer give preferential treatment to minorities or women.  The statute was not intended to diminish traditional management prerogatives.  It does not require the employer to restructure his employment practices to maximize the number of minorities and women hired.  The views of the Court of Appeals can be read, we think, as requiring the employer to hire the minority or female applicant whenever that person's objective qualifications were equal to those of a white male applicant. But Title VII does not obligate an employer to accord this preference. Rather, the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 258-59 (1981) (internal quotations and citations omitted).

Dated:  Garden City, New York
        January 23, 2023

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

By: _____
    Howard M. Miller, Esq.
    *Attorneys for Defendants*
    1010 Franklin Avenue, Suite 200
    Garden City, New York 11530
    Email:  millerh@bsk.com