UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
ARTHUR ELIAV,

                Plaintiff,

        - against -                       Case No: 22 CIV 09978 (VEC)

ROOSEVELT ISLAND OPERATING
CORPORATION; SHELTON HAYNES;
GRETCHEN ROBINSON; and TAJUNA
SHARPE,

                Defendants.
---------------------------------------------------------X

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'

MOTION TO DISMISS

The Law Offices of Neal Brickman, P.C.
Attorneys for Arthur Eliav
Ethan Leonard (EL2497)
420 Lexington Avenue - Suite 2811
New York, New York 10170
(212) 986-6840
ethan@brickmanlaw.com

## <u>TABLE OF CONTENTS</u>

**Page(s)**

Table of Authorities ……………………………………………………..  iii

Preliminary Statement …………………………………………………...  1

Limited Statement of Pertinent Facts ……..…………………….………………  3

Standard of Review ...…………………………………………………......  10

Argument …………………………………………………………......  12

Point I

  THE AC SETS FORTH CLAIMS UNDER TITLE VII AGAINST RIOC

  SUFFICIENT TO SURVIVE A MOTION TO DISMISS ……………….  12

 A. The AC Establishes Discrimination And Disparate Treatment Claims …..  12

 B. The AC Establishes Retaliation Claims …………………………………..  17

Point II

  THE AC SETS FORTH CLAIMS UNDER THE NYSHRL AGAINST

  ALL DEFENDANTS AND UNDER THE NYCHRL AGAINST THE

  INDIVIDUAL DEFENDANTS SUFFICIENT TO SURVIVE

  A MOTION TO DISMISS …………………………………………………..  18

 A. Defendants' Failure To Substantively Address A majority Of These

  Claims Precludes Dismissal Of These Claims …………………………  18

 B. Even If The Court Were To Consider The State Claims For Discrimination

  Disparate Treatment, and Retaliation In Their Merits, Dismissal

  Is Unwarranted ………………………………………………………  19

 C. The AC Establishes A Hostile Work Environment Claim Under The

  NYSHRL Against All Defendants And Under the NYCHRL Against

  The Individual Defendants …………………………………………..  21

Point III

      THE AC SETS FORTH CLAIMS UNDER 75-B AGAINST

      RIOC SUFFICIENT TO SURVIVE A MOTION TO DISMISS ………      22

Point IV

      THE AC SETS FORTH CLAIMS FOR RETALIATION

      AGAINST RIOC FOR ITS FILING OF A FRIVOLOUS

      COUNTER-CLAIM ………………………………………………      24

Conclusion …………………………………………………………………...      25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases:**

*Abraham v. New York City Education,*
    398 F'App'x 633 (2nd Cir. 2010) ……………………..…………..                 15

*Brown v. Daikin,*
    756 F.3d 219 (2nd Cir. 2014) …………………………….................                 12

*Cano v. Seiu Local 32BJ,*
    2021 US Dist LEXIS 113240 (SDNY 2021) …………………………                 19,21

*Castro v. City of New York,*
    141 A.D.3d 456 (1st Dept 2016) ……………………………………..                 22

*Chambers v. Time Warner, Inc.,*
    282 F. 3d 147 (2nd Cir. 2002) ……………………………………..                 10

*Chin v. New York City Hous. Auth.,*
    106 A.D.3d 443 (1st Dept 2013) ……………………………………..                 21

*Continental Collieries, Inc. v. Shober,*
    130 F.2d 631 (3rd Cir. 1942) ……………………………..……………..                 11

*Cooper v. Parsky,*
    140 F. 3d 433 (2nd Cir. 1998) ……………………..…………………                 11

*Drew v. Plaza Constr. Corp.,*
    688 F. Supp.2d 270 (SDNY 2010) …………………………………..                 11

*Farrugia v. N Shore Univ. Hosp.,*
    13 Misc.3d 740, 820 N.Y.S.2d 718 (N.Y. Sup. Ct. 2006) ….……                 24

*Fei v. WestLB AG,*
    2008 U.S. Dist. LEXIS 16338; 155 Lab Cas.
    (CCH) P35,406 (HB) (S.D.N.Y. 2008) …………………………………..                 25

*Finn v. New York State Off. Of Mental-Health-Rockland Psychiatric Ctr.,*
    2011 WL 4639827 (SDNY Oct. 6, 2011) …………………..…….…...                 18

*Golston-Green v City of New York*,
　　184 A.D.3d 24 (2nd Dept 2020) ………………………………………………　　21

*Harrington v. City of New York*,
　　157 A.D.3d 582 (1st Dept. 2018) ………………………………………………　　20

*Hill v. City of New York,*
　　136 F. Supp. 3d 304 (EDNY 2015) ……………………………………………　　12

*Hudson v. International Business Machines, Corp*.,
　　620 F.2d 35 (2nd Cir. 1980) ……………………………………………………..　　16

*Jaeger-Ramberg v. New York City Health and Hospitals Corporation*,
　　2007 WL 2176391 (S.Ct. NY Cty, June 5, 2007) ………………………　　23

*Jeudy v. City of New York,*
　　142 A.D.3d 821 (1st Dept 2016) ………………..…………………………....　　3

*Johnson v. Strive E. Harlem Empl. Group*,
　　990 F.Supp.2d 435 (SDNY 2014) ……………………………………..　　20

*Jute v. Hamilton Sundstrand Corp.,*
　　420 F.3d 166 (2nd Cir. 2005) ………………………………………………..　　24

*KForce, Inc. v. Alden Personnel, Inc.,*
　　288 F. Supp. 2d 513 (S.D.N.Y. 2003) …………………………………　　10

*Klein v. Town & Country Fine Jewelry Group, Inc.,*
　　283 A.D.2d 368 (2001) …………………………………………………　　25

*Kreinik v. Showbran Photo, Inc.,*
　　2003 U.S. Dist. LEXIS 18276;
　　2003 WL 22339268 (SDNY 2003) …………………………………………..　　25

*Leibowitz v. Cornell Univ.*,
　　445 F.3d 586 (2nd Cir. 2006) ……………………………………………………　　11

*Littlejohn v. City of New York*,
　　795 F.3d 297 (2nd Cir. 2015) ……………………………………………………　　10

*Loften v. John T. Mather Mem. Hosp.*,
　　2016 U.S. Dist. LEXIS 71273 (EDNY 2016) ……………………………　　10

*Martin v. N. Y. State Dep't of Mental Hygiene*,
    588 F.2d 371 (2nd Cir. 1978) ……………………….………………… 11

*Maynard v. Montefiore Medical Center*,
    2021 WL 396700 (SDNY Feb. 4, 2021) …………………………… 21

*McCourt v. Fashion Institute of Technology,*
    2023 WL 3175057 (S.Ct., NY Cty, May 1, 2023) ………………… 23

*McHenry v. Fox News Network, LLC*,
    510 F Supp 3d 51 (SDNY 2019) ………………………………………... 19

*Medina v. Department of Education of the City of New York*,
    950 N.Y.S.2d 724 (S.Ct. NY Cty 2012) …………………………… 23

*Mihalik v. Credit Agricole Cheuvreux North America, Inc*.,
    715 F.3d 102 (2nd Cir. 2013) …………………………………………… 19-21

*Patane v. Clark*,
    508 F.3d 106 (2nd Cir. 2007) …………………………………………… 11

*Pollock v. Shea*,
    568 F.Supp.3d 500 (SDNY Oct. 26, 2021) ……………………………... 21

*Root v. City Univ. of New York*,
    2021 WL 435297 (S.Ct., NY Cty Sept. 24, 2021) ………………… 20

*Schanfield v. Sojitz Corp. of Am*.,
    663 F.Supp.2d 305 (SDNY 2009) ……………………………………… 20

*Schaper v. Bronx Lebanon Hospital Center*,
    408 F.Supp.3d 379 (SDNY Sept. 30, 2019) …………………………… 20

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974) …………………………………………………… 11

*Shah v. New York State Dept. of Civil Service*,
    1996 WL 19021 (SDNY Jan. 17, 1996) …….………………………… 15

*Sorrenti v. City of NY.,*
    17 Misc. 3d 1102A, 851 N.Y.S.2d 61,
    2007 WL 2772308 (NY Sup. Ct. 2007) ………………………….. 24

*Sotomayor v. City of New York,*
    862 F.Supp.2d 226 (EDNY 2012) ……………………………….....    20

*Stryker v. HSBC Sec. (USA),*
    2020 WL 5127461 (SDNY Aug. 31, 2020) …………………………..    20

*Sweet v. Sheahan,*
    235 F. 3d 80 (2nd Cir. 2000) ………………………………………..    10

*Swierkiewicz v. Sorema NA.,*
    534 U.S. 506 (2002) ………………………………………………..    11

*Terry v. Ashcroft,*
    336 F.3d 128 (2nd Cir. 2003) ……………..……………………….....    24

*Tipaldo v. Lynn,*
    76 A.D.3d 477 (1st Dept 2010) …………………………………..    22,23

*Vega v. Hempstead Union Free Sch. Dist.,*
    801 F.3d 72 (2nd Cir. 2015) ………………..……………………….    10

*Vibert v. County of Rensselaer,*
    2017 WL 3948455 (NDNY 2017) ……………………………………    23

*Williams v. New York City Housing Authority,*
    61 A.D.3d 62 (1st Dept 2009) ……………………………………    20,24

*Williams v. N.Y.C. Transit Auth.,*
    No. 10-CV-882, 2014 WL 11474810 (EDNY Sept. 16, 2014) …………    12

*Yankelevitz v. Cornell Univ.,*
    1996 U.S. Dist. LEXIS 11298, 1996 WL 447749 (SDNY 1996) ……….    24

*Zakrzewska v. New Sch.,*
    14 N.Y.3d 469 (2010) ……………………………………………….    21

<u>Statutes</u>:

New York Civil Service Law §75-B ……………………………………….    *passim*

New York City Human Rights Law ………………………………………..    *passim*

New York State Human Rights Law ……………………………………….    *passim*

Plaintiff, Arthur Eliav ("Eliav" or "Plaintiff"), by and through his undersigned attorneys, The Law Offices of Neal Brickman, P.C., respectfully submits this Memorandum of Law in Opposition to the motion to dismiss submitted by Roosevelt Island Operating Corporation ("RIOC"), Shelton Haynes ("Haynes"), Gretchen Robinson ("Robinson") and Tajuna Sharpe ("Sharpe," and together with RIOC, Haynes, and Robinson, the "Defendants", and together with Haynes and Robinson, the "Individual Defendants"). The Amended Complaint ("AC") properly sets forth the identified causes of action, and Defendants' motion to dismiss should thus be denied.

<u>Preliminary Statement</u>

As with each of their prior filings, Defendants grossly over-reach with their instant motion to dismiss. The inescapable reality, as set forth in the AC, is that after exhibiting a pattern of discrimination and retaliation in the past, RIOC now with the Individual Defendants at the helm consistently disparately treated and while creating and fostering a hostile work environment for Eliav on the basis of his religion (an observant member of the Jewish faith, Orthodox Judaism) and national origin (a native of Uzbekistan of Central Asian/Iranian extraction). This was demonstrated through, *inter alia*, exclusion from routine meetings by unnecessarily, but purposefully and repeatedly, holding the same in a local church knowing that Eliav could not thus attend because of his religious faith, as well as scheduling and rescheduling meetings (including the most important Board meeting of the year) for days known to be holy to Eliav.[1] However, as long as Eliav did not overly complain or overtly stand up for his rights, Defendants were content to continue to take advantage of his work and dedication to RIOC while repeatedly denying him warranted promotion (plaintiff readily acknowledges that only the latest iteration of such a denial

---

[1] These facts are ignored by Defendants in their motion, presumably because they run directly contrary to Defendants' false narrative. Denial of the motion is warranted on this ground alone.

falls within the relevant actionable time period).   However, within days of Eliav's making complaint of discrimination, disparate treatment, hiring and retention irregularities, and violations of New York's FOIL, Eliav's 15 years of dedicated service, hard work, and repeatedly praised accomplishments for RIOC were pushed to the side with his summary termination on December 1, 2021.   Eliav was not given a reason for his termination at the time, but he was not terminated for cause (another current misrepresentation by Defendants). This is the gravamen of Eliav's complaint, and these facts cannot be legitimately disputed.

Similarly, but also contrary to Defendants' current allegations, the record is clear that Eliav was a valued employee who was routinely praised for his work and contributions to RIOC.  He was never subjected to discipline; written-up or even noticed for poor performance; received a negative review; nor accused during his tenure of insubordination in any form.[2]  The allegations of "poor performance" and "gross insubordination" are wholly without merit and are noteworthy only as examples of the extent that Defendants appear to be willing to go to cast false aspersions on Eliav and attempt to distract from their own improper behavior.  In their zeal to dismiss the AC, the Defendants improperly cherry-pick allegations from the AC; ignore relevant allegations; misconstrue Eliav's claims; reference inapplicable law; and blatantly ignore the disparate treatment suffered by Eliav at the hands of Defendants.  Defendants go to great lengths to attempt to disprove legal theories that Eliav does not contest and to misstate or ignore the relevant facts so as to attempt to justify their legal theories.  This matter is before the Court on a pre-answer motion

---

[2] While Defendants make reference to a negative performance review from over five years in the past, same is not part of the record and cannot be considered on this motion.  Moreover, such "review" was merely an unsigned draft.  It was never provided to Eliav – much less as a formal review -- who never had a timely opportunity to rebut or address the same.  It was only dredged up in a vain attempt to smear Eliav before this Court.  Defendants' bad faith in this regard should not be rewarded.  Moreover, Eliav received no negative feedback whatsoever over the last five years, much less any formal negative reviews.

to dismiss, and, aside from the claims under New York Civil Service Law § 75-B ("§75-B"), the motion to dismiss should be denied in its entirety.

<u>Limited Statement of Pertinent Facts[3]</u>

Eliav is an observant Orthodox Jewish male who was born in Tashkent, Uzbekistan in 1981, of Central Asian/Iranian extraction, and who came to the United States when he was eleven (11) years-old. (AC¶57). Eliav is a practicing Orthodox Jew. He keeps the Sabbath. He wears a yarmulke. He keeps kosher, and follows the strictures of Orthodox Judaism. (AC¶58). In their moving papers, Defendants continue to show disdain for Eliav, his religion, and his national origin. They pretend for the purposes of this motion as though there is no difference between an Orthodox Jew of Central Asian/Iranian extraction like Eliav and non-Orthodox (mostly reform) Ashkenazi/European Jews, even while RIOC and defendants have repeatedly (both over the years of Eliav's employment and more blatantly since 2021) disparately treated and improperly singled out Eliav for the practice of his religion as an observant Orthodox member of the Jewish faith. Defendants ignore the fact that the difference in ideology between these two groups is vastly more distinct in theology and practice than various sects of Christianity.

Eliav interned in the RIOC Legal Department during law school and was hired upon graduation in September 2006. (AC¶¶12-3). On or about September 11, 2011, as a result of his exemplary work, Eliav was promoted to the position of Associate General Counsel. Since that time, Eliav assisted in the transition of no fewer than four General Counsels (including Jacqueline Flug, each one taking the position for which he was eminently, and recently, more qualified for, and helping each transition into the role he should have been promoted into. (AC¶14). Eliav had

_____

[3] Eliav respectfully refers the Court to his AC for a more fulsome discussion of the relevant facts, including those prior acts which are clearly permitted as "background evidence in support of a timely claim." *Jeudy v. City of New York*, 142 A.D.3d 821, 823 (1ˢᵗ Dept 2016).

a distinguished career at RIOC, routinely receiving praise and uniformly positive performance reviews, as well as performance-based increases in each year that they were available. During this same period, Eliav routinely was asked to serve as the *de facto* General Counsel, at times for months, while the position was ultimately filled by other lawyers. (AC¶¶15-9).

Despite his evident qualifications and strong performance as acknowledged by the then leadership of RIOC, Eliav was passed over for promotion on several occasions in which the position was not even posted and without him even being afforded the opportunity to apply – both in direct contravention of RIOC written policy and despite the fact that he would then have to assist the new General Counsel to do their jobs because he had more relevant experience than they did. (AC¶¶16-20,24).  The circumstances were particularly true in the most recent appointments of Jacquelyn Flug and Robinson.  (AC¶¶20-30).  Eliav was clearly being punished for his truthful testimony in the discrimination case brought by Donald Lewis. (AC¶¶16-7,20).  When Flug – who openly expressed her disdain for Orthodox Judaism[4] -- was appointed, Eliav was required not only to educate her in her responsibilities within RIOC, but also to assume many of the duties that should have been fulfilled by the General Counsel, but without receiving any promotion or financial remuneration. (AC¶20).  When Robinson left RIOC the first time, her Internal Control duties were transferred to Eliav, without any reduction of his existing duties and, contrary to promise, without any increase in remuneration. (AC¶¶21-2)[5]

---

[4] By way of example only, Flug made numerous comments concerning her beliefs that Orthodox Judaism was non-egalitarian and sexist. (AC¶65).  It was also Flug generated and upon her departure from RIOC left an unsigned draft "review" of Eliav filled with half-truths and misstatements that was – again contrary to RIOC policy – never finalized or shown to Eliav. This document was not only used as an improper justification to rehire Robinson in lieu of Eliav, but now has improperly been used to attempt to smear Eliav before this Court. (AC§23).

[5] For three years (2018-21), Eliav was not paid the agreed upon increase of $2,500.00 which is clearly owed.  Notably, not only does the failure to pay these monies constitute additional disparate treatment, but also is an unequivocal actionable breach of contract.  In addition, these same duties – when performed by

Robinson returned after Flug's departure and assumed the General Counsel role, again without the position having been posted or competitively filled.  Robinson had less relevant experience than Eliav and had never worked in a corporate legal department before. (AC¶25). This was a precursor of the trend that would be exacerbated under Haynes of advancing Black candidates, like the individual Defendants while dismissing disproportionate numbers of Caucasian employees. (AC¶23).[6]

Eliav continued professionally to complete all tasks assigned to him despite the increasingly hostile environment based on his religion.  One repeated act was the ongoing propensity of RIOC's management to hold public meetings, classes, and opportunities in the Church on Roosevelt Island. Defendants were specifically aware that Eliav (or any other practicing observant Orthodox member of the Jewish faith) could not attend such meetings, as he had been forced to make clear on numerous occasions.  There were always alternative locations for such meetings, but Defendants purposefully and repeatedly used that location to exclude Eliav. (AC¶27).   In addition, in 2021, Eliav also became increasingly and deliberately excluded from certain important matters typically addressed by the Legal Department, including personnel matters, and, more unsettlingly, budgetary matters.  Thus, for example, under the leadership of Defendants Haynes, Sharpe, and Robinson, instead of sharing the proposed detailed budget with the Board via the Board book prepared or reviewed by Eliav (as has been the practice for Eliav's entire 15-year tenure at RIOC), the budget detail was instead provided directly to the Board by Finance Department, and shared only with Robinson within the Legal Department.  (AC¶28).

---

other individuals who were not observant Orthodox Jews – were assigned much greater value – constituting a significant portion of duties prescribed for $80,000 - $90,000 per year jobs.
[6] In recent years, it is undeniable that a disparate proportion of lay-offs – especially among senior personnel, including, but not limited to, the former CEO, the Comptroller, the Assistant Comptroller, the COO, the PIO, and various other Directors and Assistant Vice-Presidents – were Caucasian.

On or about August 25, 2021, Haynes, the then and current President and CEO of RIOC, informed Eliav that the pandemic-related hiring and promotion freeze had ended and that the new budget was being prepared.  Eliav reiterated his desire to be promoted and noted his eminent qualifications, including his work history at RIOC. Haynes stated to Eliav that he was in favor of the idea of Eliav's promotion, but needed to discuss it with Robinson and Sharpe. (AC¶29).

At or about this time, Robinson further harassed Eliav for taking time off from work to observe religious holidays.  In conjunction with correspondence concerning the holidays that were required by Eliav, Robinson – with the imprimatur of, *inter alia*, Haynes and RIOC -- orchestrated the rescheduling of the Board meeting at which the budget (that was not disclosed in advance in violation of past practice and policy) was presented as a *fait accompli*.  That budget meeting is required to take place in September and had been scheduled for September 2, 2021, along with other board meetings for 2021 in December of 2020.  However, sometime in August of 2021, Defendants decided to change the date to September 29, 2021.  (AC¶30)

The date change is significant for two reasons.  First, as it was virtually at the end of the month, and there would be little time to reconsider any objections raised at the meeting and the budget's limited presentation.  Second, the change occurred as a latter part of an email exchange in which Mr. Eliav specifically identified the dates in September on which he could not work due to Jewish holidays, of which September 29, 2023 was one.  Not only were these dates well known to Defendants and part of the same email chain in which the initial date for the September meeting cancelled and rescheduled, but the day of the week was also changed from a Thursday (the typical day of the week for Board meetings) to a Wednesday.  Tellingly, September 30, 2023, a Thursday, was not a Jewish holiday on which Mr. Eliav could not work, but nonetheless was not selected for the adjourned date.  (AC¶31).

6

In contravention with past practice, the budget released to the public in connection with that Board meeting contained no detailed description of the staffing plan and no salaries of individual employees were reported.  (AC¶33). Subsequently, various iterations of the budget were generated with variant new positions within the legal department, ultimately landing on the creation of a Deputy General Counsel ("DGC") position seemingly on the whims of Defendants and not based on the actual needs of the department. (AC¶¶34-6).

Shortly after the summary budget was made public in September 2021, a Freedom of Information Law (FOIL) request was sent to RIOC from a local reporter, David Stone, seeking, *inter alia*, "a document listing all RIOC employees, including executives, and their annual pay." In retaliation for Mr. Stone's prior requests and sometimes unflattering articles about RIOC management, Robinson and Haynes had developed an unwritten policy pursuant to which all such requests were routinely subjected to unreasonable delays and in writing directed that any responses should be delayed a minimum of 45 days.  When Sharpe was requested to provide the relevant information as required by law, Robinson intervened and resisted turning over the requested, and required by law, information, suggesting at various points that RIOC (a) provide incomplete information; (b) ignore the plain obligations set forth by law; and (c) simply reference an unaffiliated website that purported to have certain of the requested information, but actually reflected a prior year's budget information.  (AC¶¶37-40). Eliav was forced to then get involved and make complaint to RIOC's General Counsel, Robinson.  One week later, RIOC's President Haynes directed the initially assigned attorney on the day after Thanksgiving to draft a wholly unnecessary memorandum laying out the applicable statutory and case law, which only served to demonstrate the accuracy of the position that Eliav had advocated and been forced to complain to

his supervisors about. (AC¶¶41-3).  Defendants would shortly take further action against Eliav for his complaints in direct contravention of §75-B. (AC¶¶97-104).

In the interim, on Wednesday, November 24, 2021, Robinson informed Eliav and the then-Assistant General Counsel Lada Stasko ("Stasko") of the DGC position that would be posted internally and invited Eliav to apply.  However, when the posting was presented it was clear that it had been drafted to exclude Eliav by requiring specific trial experience that he could not have accrued having dedicated his entire career to RIOC which outsourced all of its trial work.  RIOC's exclusionary practices had developed form simply not posting positions to creating posting to exclude Eliav.  (AC¶¶44-6).  At the invitation of Robinson to raise any concerns or questions about the DGC position, on November 29, 2021, Eliav – as yet unaware of Defendants' predetermined decision to hire Markus Sztejnberg despite the fact that he was waiting for a private entity offer which he would accept and leave RIOC for two months after his retention – duly wrote to Robinson, copying Sharpe, and Haynes, to express his concerns with the posting, including, *inter alia*, the assumptions upon which it was allegedly based; how it was designed to exclude anyone who had dedicated his/her whole career to RIOC, as he had; and the fact that this position was not being handled as recent promotions within RIOC had been handled (such promotions, as well known to RIOC and its executives, including those of, *inter alia*, Robinson, Sharpe and Altheria Jackson (the then AVP of Operations at RIOC), all African-American females)[7]. (AC¶¶45-50).

In a follow-up email, Eliav reiterated that the process was "intentionally prejudicial and rigged" against him and asked for the opportunity to discuss the matter further with Haynes.  (AC¶51).

---

[7] Eliav reported these concerns of disparate treatment to Robinson, the RIOC General Counsel, precisely in the manner prescribed by the RIOC Policies on Reporting Misconduct and Protection Against Adverse Personnel Action (also known as the Whistleblower Protection Policies) adopted by the RIOC Board of Directors on March 25, 2010 pursuant to Public Authorities Law § 2857 and in a manner clearly protected by Title VII's own strictures against discrimination, disparate treatment, and retaliation. (AC¶51).

Defendants had created a situation solely to bait Eliav and ascertain if he would continue to take their abuse or challenge such ongoing improper treatment which they would then use, as they have done, as a pretext to terminate him.

Less than 48 hours later, less than a week after the culmination of his complaints concerning RIOC's, Haynes', and Robinson's violations of NY's FOIL, and while he was out of the office sick, RIOC, through Robinson and with the knowledge and consent of the other Individual Defendants, summarily terminated Eliav by email at approximately 1:45 p.m.[8]  The Individual Defendants orchestrated the termination because Haynes was angry about the two emails written by Eliav seeking to point out RIOC and the Individual Defendants' disparate treatment of Eliav. (AC¶52).  At the time of Eliav's termination, he was the sixth ranking employee at RIOC based on salary.  Of the five employees that ranked higher than Eliav, four were African-American and were all recently promoted into their positions – none of them had nearly the longevity that Eliav had at RIOC.  In fact, at the time of Eliav's termination, Eliav had significantly more longevity at RIOC than any of the six top-paid employees at RIOC.  The remaining higher-ranking employee, a Caucasian male with extensive relevant experience, was fired within months after Eliav's termination.  Eliav's employment was terminated as part of an overall systematic elimination of non-African-American employees from positions of authority at RIOC.  (AC¶54).

Defendants have continued to retaliate against Eliav.  Specifically, in direct retaliation for Eliav's filing of a charge of discrimination with the EEOC and the subsequent filing of this action, RIOC orchestrated and directed the filing of a sham and unjustified counter-claim designed solely to besmirch Plaintiff in his chosen profession, the law, and harm his future employment prospects.  (AC¶¶106,110).  The vindictive counter-claim exemplifies the retaliatory and abusive behavior of

---

[8] The notice included a letter of termination and a proposed severance agreement.  As a matter of practice, RIOC only offers severance to employees terminated without cause. (AC¶52).

RIOC under the governance of the individual Defendants and raised allegations not referenced by Eliav in his complaint or earlier charges of discrimination and retaliation and far exceeded the bounds of any issues or allegations that he raised; all while unsupported by the facts or existing case law, and, in fact, contrary to the relevant law, of the jurisdiction.[9] (AC¶¶107-9).

<u>Standard of Review</u>

The Federal Rules of Civil Procedure require only that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In considering a motion to dismiss pursuant to Rule 12(b)(6), the court should construe the complaint liberally, 'accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor.'" *KForce, Inc. v. Alden Personnel, Inc.,* 288 F. Supp. 2d 513, 515 (S.D.N.Y. 2003), *quoting Chambers v. Time Warner, Inc*., 282 F. 3d 147, 152 (2nd Cir. 2002). "Dismissal is only appropriate when 'it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief.'" *Id*., *quoting Sweet v. Sheahan,* 235 F. 3d 80, 83 (2nd Cir. 2000) (emphasis added).

This is especially true in discrimination cases. As the Second Circuit has asserted, a plaintiff asserting a claim of employment discrimination under Title VII at the pleading stage need not alleged facts to "give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination, but rather only those that "sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2nd Cir. 2015); see also, *Loften v. John T. Mather Mem. Hosp.*, 2016 U.S. Dist. LEXIS 71273 (EDNY 2016); *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d

---

[9] Although not dispositive at this juncture, it is noteworthy that Defendants also cite to "facts" in their counter-claim, including, but not limited to, titles allegedly held by Eliav, that they know are abjectly factually inaccurate.

72, 87 (2nd Cir. 2015) (Courts should be aware of the "elusive nature of intentional discrimination" and the need to combine various facts to support a finding of an inference of discrimination); *Swierkiewicz v. Sorema NA.*, 534 U.S. 506, 513 (2002) (Complaints in Title VII discrimination cases "must satisfy only the simple requirements of Rule 8(a)").  The proper standard is notice pleadings wherein "a plaintiff is required only to give a defendant fair notice of what the claim is and the grounds upon which it rests" to survive a motion to dismiss. *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2nd Cir. 2006).  "Employment discrimination claims need not contain specific facts establishing a prima facie case of discrimination." *Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 275 (SDNY 2010).

In ruling on a motion pursuant to FRCP 12(b)(6), the duty of a court "is merely to assess the legal feasibility of the complaint, not to assess the weight of the evidence which might be offered in support thereof." *Cooper v. Parsky,* 140 F. 3d 433, 440 (2nd Cir. 1998) (internal citation and quotation marks omitted).  "No matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it." *Continental Collieries, Inc. v. Shober*, 130 F.2d  631, 635 (3rd Cir. 1942). *See, also, Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) (a district court weighing a motion to dismiss asks "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.") "Only a statement of facts so conclusory that it fails to give notice of the basic events and circumstances on which a plaintiff relies should be rejected as legally insufficient under 12(b)(6)." *Patane v. Clark*, 508 F.3d 106 (2nd Cir. 2007); *see also, Martin v. N. Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2nd Cir. 1978) (*per curiam*). There is no question that the AC is detailed enough to avoid dismissal under this standard.  As such, the Defendants' motion to dismiss should be denied in its entirety.

Argument

Point I

THE AC SETS FORTH CLAIMS UNDER TITLE VII AGAINST RIOC SUFFICIENT TO
SURVIVE A MOTION TO DISMISS

A.     The AC Establishes Discrimination And Disparate Treatment Claims.

Defendants spend a great deal of time asserting that Plaintiff's claims must be dismissed

because he alleges nothing more than conclusory allegations without a single fact that could give

rise to any inference of discriminatory intent.  In so doing, Defendants abjectly ignore Plaintiff's

allegations of disparate treatment.  To set forth a prima facie case of employment discrimination

under, inter alia, Title VII, or New York law, "a plaintiff must show (1) that he is a member of a

protected class; (2) that he was qualified for the position in question; (3) that defendants took an

adverse employment action against him; and (4) that the circumstances support an inference of

discrimination on the basis of his membership in a protected class." *Williams v. N.Y.C. Transit*

*Auth.*, No. 10-CV-882, 2014 WL 11474810, at *2 (E.D.N.Y. Sept. 16, 2014).  More particularly,

at the pre-answer motion to dismiss pleading stage a Plaintiff need only provide circumstantial

evidence that he was treated less favorably than similarly situated colleagues not in his protected

class. *See e.g., Hill v. City of New York,* 136 F. Supp. 3d 304, 335 (EDNY 2015); *Brown v. Daikin,*

756 F.3d 219 (2nd Cir. 2014).

In the instant case, Plaintiff does not rely solely on conclusory allegations, the "false

syllogism, or stray remarks, as Defendants contend, but rather the AC relates how Defendants

purposefully, routinely, and intentionally scheduled meetings in the local church so as to exclude

Eliav knowing that he could not attend such meetings based on his religious observance.  The AC

also detailed how other more appropriate venues were available, but that same were not utilized

solely to exclude Eliav.  The fact that Defendants used the tenets of his religion as the means by which they effected his exclusion only heightens the malevolence of the action and highlights their discriminatory intent.  The AC also specifically asserted how Robinson, Plaintiff's direct supervisor, routinely objected to and harassed Plaintiff for not working during his religion's high holidays and sacred days.  In addition, it is clear that in September of 2021, after Defendants had already begun excluding Eliav from meetings and budgetary matters and discussions, they purposefully moved the most important Board meeting of the year to the date of a religious holiday on which they knew Eliav could not attend and further purposefully presented only a limited budget in advance (and contrary to past practice).  The AC also specifically relates how there were other dates that were more keeping with past practice on which Eliav could have attended but that these dates were purposefully and intentionally rejected so as to exclude his participation.  These actions were escalating in August and September of 2021 and would set the stage for Defendants pretextual termination of Eliav on December 1, 2021.  These facts alone sufficiently demonstrate disparate treatment on the basis of Eliav's religion and national origin and distinguish each of the cases cited by Defendants as a basis for dismissal that the AC solely contains and relies solely on conclusory allegations, a "false syllogism", and/or stray remarks.[10]

The AC also then relates how Defendants yet again passed Eliav over for promotion and then terminated him.  With regard to the DGC position, Defendants again ignore pertinent facts.

First, they ignore the fact that the preclusion of Eliav was simply another step in the pattern of excluding Eliav from advancement within RIOC.  The prior two promotional opportunities –

---

[10] It should be recognized that the perpetrator of the "stray remarks" which were actually very pointed and directed precisely in derogatory fashion at integral tenets of Plaintiff's religion was the same individual who left an unsigned draft "review" which was never presented, given an opportunity to fair review or even, apparently, fact-checked, so as to justify the hire of the less experienced Robinson.

when Flug and Robinson were promoted – were effected without any postings or any opportunity to formally apply despite RIOC and its officers being aware that Eliav was interested in the position. Notably, this type of appointment was effected in contravention of RIOC's own policies and procedures. It is also clear that the AC does assert not only that Eliav was more qualified and had more pertinent experience than Flug, and especially Robinson, who at the time had never worked in a corporate legal department before, but that he had to educate them on their jobs and routinely had to fulfill tasks and roles that were those of the GC at RIOC. By way of example only, while the GC was RIOC's Ethics Officer, Eliav was made to complete many of the Ethics Officer's functions while not being compensated for the same. (Neither was Eliav a Compliance Officer as Defendants now baselessly contend).

Second, and relatedly, it is primarily the form of the DGC posting that is relevant to Eliav's claims. It was designed to exclude him, despite his years of service, the fact that he had successfully fulfilled the role of GC for months at a time when required, and despite Defendants fallacious offer for him to apply. Defendants did not want Eliav to advance at RIOC. The fact that they changed tactics just as they were becoming more aggressive in their harassment of Eliav based on his religion and national origin was not an accident. Moreover, while Eliav was more qualified than Sztejnberg, Sztejnberg was not hired until after Eliav was improperly terminated. Defendants had again seen a need for a higher position within RIOC's legal department, but had predetermined that Eliav could not have it despite his eminent qualifications.

While employers do have the right to set criteria for hires, they do not have the right to create criteria to discriminate against an individual because of his religion or national origin. Eliav had fulfilled his role without negative review, castigation, or reprimand, but rather with accolades and regular pay increases whenever available, but still was not acceptable. Defendants asserted

that the need was justified by a larger number of litigations – another non-existent "fact." There was not only not "need" for the disqualifying language, it was irrelevant to the very role given that the on the job experience at RIOC was effectively the best relevant experience for the position. This is not a circumstance where an employee asserts that he was a superior candidate because he had an advanced degree that actually had no bearing on the role sought, but rather an employee with the actual relevant experience being purposefully excluded on a pretextual basis once again from advancement. See *Abraham v. New York City Education*, 398 F'App'x 633 (2ⁿᵈ Cir. 2010)[11]. The pretextual justification for the requirement is enough to raise a question of fact sufficient under the circumstances, including the pattern of exclusionary tactics, and the recent uptick in harassment based on Eliav's religious practice, to raise an inference of discrimination and stave off the instant motion to dismiss.

With regard to Eliav's improper termination, Defendants essentially raise three arguments, none of which is dispositive. First, they reiterate their assertion that Plaintiff alleged no facts from which an inference of discrimination could be found. As set forth above, the relevant facts and allegations in the AC render this argument moot.

Second, Defendants assert that Plaintiff has essentially waived this claim by asserting that the AC's other allegations belie the possibility that discriminatory animus has a role in Plaintiff's termination. In a truly bizarre contention, Defendants assert that because the AC alleges that Haynes terminated Eliav because he "was angry" about the two November 29, 2021 emails from

---

[11] Each of the eleven (11) cases cited by Defendants in IIA3 concerning the proposition that employers determine the criteria for positions at their businesses was decided at the summary judgment, not motion to dismiss stage. (Defendants' Brief pp.10-2). Highlighting the difference between summary judgment and motion to dismiss standards, in one such case, the Court had previously denied Defendants' motion to dismiss finding that Plaintiff had met its pleading burden. See *Shah v. New York State Dept. of Civil Service*, 1996 WL 19021 (SDNY Jan. 17, 1996).

Plaintiff, Plaintiff can no longer set forth a claim for discriminatory discharge (or retaliation). However, even a cursory review of the AC reveals that the full sentence reads as follows: "The Individual Defendants orchestrated the termination because Haynes was angry about the two emails written by Eliav seeking to point out RIOC and the Individual Defendants' disparate treatment of Eliav." Again, and as discussed concerning retaliation below, Eliav termination was presaged the ongoing and increasingly apparent discriminatory animus of Defendants but would not have occurred when it did but for his complaints of discrimination and disparate treatment, including his pushback against harassment for not working on religious holidays and culminating with his November 29, 2021 emails.  Contrary to the further allegations of Defendants, those communications are hardly "replete with unprofessional language" nor do they evince "patent insubordination." To the contrary, the emails are professional and fact based, and the one directed to Haynes ends with an invitation to discuss the matters further.  However, rather than accept such an offer, Defendants summarily terminated Eliav within 48 hours.  Despite – or rather in recognition of – Defendants' repeated efforts to mischaracterize the allegations and claims in the AC, as well as the other communications of Eliav, it is clear that Eliav has set forth sufficient facts to survive Defendants' motion to dismiss on these claims.

Third, Defendants maintain that Plaintiff's claims of a pattern of systematic discrimination at RIOC do not make his claim plausible.  To the contrary, while statistical evidence will not establish a prima facie case on its own, it can be used to bolster claims of discrimination. See *e.g., Hudson v. International Business Machines, Corp.*, 620 F.2d 35, 38 (2nd Cir. 1980).  In the instance case, the disparate treatment demonstrated by the Defendants in their termination of non-Black executives and promoting of Black executives in contravention of RIOC's own policies, serves as

background for their discriminatory and retaliatory acts against Plaintiff for his own complaints and attempts to follow his religious beliefs.

B.      The AC Establishes Retaliation Claims

Contrary to the assertions of Defendants, who in their zeal to oppose the AC, repeatedly misstate and perhaps even misread the allegations in the AC and the other limited documents that they have placed in the record, none of their three arguments as to why Plaintiff's retaliation claims should be dismissed are dispositive.

First, while Eliav does maintain that Defendants, and especially RIOC, retaliated against him for his testimony during Lewis' litigation, he does not contend that Defendants waited five years to retaliate against him for such truthful testimony or that such testimony was the basis for his termination on December 1, 2021.  The AC is clear that Defendants repeatedly retaliated against Eliav over the years after his truthful testimony.  It is clear that subsequent to that testimony and up to the date of his termination he was denied the opportunity to apply for any advancement at RIOC despite his strong performance, his expressed desire to apply for any open positions for advancement, the existence of no fewer than three openings for advancement, and his unequivocal qualifications for each such open position (he had successfully fulfilled the GC position on an interim – albeit unacknowledged by title or pay – several times and for up to months at a time).  It is clear that Robinson was aware of Eliav's testimony and that Haynes stated to Eliav that he was in favor of his promotion but would have to talk to, *inter alia*, Robinson first.  It was then that the positions criteria were created and posted – criteria designed to exclude Eliav and ratchet up the disparate treatment that he had already had to endure.

With regard to Eliav's termination the AC is clear that RIOC through Haynes orchestrated Eliav's termination because Haynes was angry that Eliav had complained about disparate treatment in RIOC's hiring practices that were designed and "intentionally prejudicial" to exclude him as an observant practicing Orthodox member of the Jewish faith of Central Asian/Iranian extraction (AC¶52).  Despite Defendants' current attempts at subterfuge, this allegation concerning Haynes, whose improper activities as President of RIOC clearly are attributable to RIOC for liability purposes, is clear.  This is certainly alleged to be the basis for Haynes' actions against Eliav on December 1, 2021, less than 48 hours after Eliav's correspondence.  Not only did the emails constitute protected activity under, inter alia, Title VII, they certainly did not contain such offensive language that they themselves should be rendered unprotected.  If Defendants contentions in this regard were accepted, every single employee's complaint of discrimination would be stripped of protection.  This is not a circumstance of threatening, profanity-ridden, offensive, *ad hominen* attacks as represented by Defendants. See *e.g., Finn v. New York State Off. Of Mental-Health-Rockland Psychiatric Ctr*, 2011 WL 4639827 (SDNY Oct. 6, 2011) complaint of   This retaliation claim should not be dismissed.

<u>Point II</u>

<u>THE AC SETS FORTH CLAIMS UNDER THE NYSHRL AGAINST ALL DEFENDANTS AND THE NYCHRL AGAINST THE INDIVIDUAL DEFENDANTS SUFFICIENT TO SURVIVE A MOTION TO DISMISS</u>

A.    <u>Defendants' Failure To Substantively Address A Majority Of These Claims Precludes Dismissal Of Thes Claims</u>

As an initial, and dispositive matter, Defendants did not address Eliav's New York State and City claims in any fashion except to assert in conclusory fashion that "no well-pled

discriminatory conduct" was alleged vis-à-vis the individual defendants and that they cannot be found liable absent liability on the part of RIOC.

These assertions do not address the NYSHRL claims at all as against RIOC.  As such, the claims against RIOC under the NYSHRL are currently unopposed and cannot be dismissed. This is especially true as – subsequent to the effective amendment of the NYSHRL on August 12, 2019 – its construction demands the same liberal interpretations and implementations as the NYCHRL[12], and, as such, must be reviewed separately from Title VII claims.  See *e.g., Mihalik v. Credit Agricole Cheuvreux North America, Inc*., 715 F.3d 102, 108-9 (2nd Cir. 2013) (Recognizing that although many federal courts had failed to recognize the effect of the 2005 amendment to the NYCHRL, through passage the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), same clearly mandated that the NYCHRL thereafter required an independent analysis from Title VII); see also, *McHenry v. Fox News Network, LLC*, 510 F Supp 3d 51, 68 (SDNY 2019) ("In August 2019, the NYSHRL was amended to direct courts to construe the NYSHRL, like the NYCHRL [New York City Human Rights Law], 'liberally for the accomplishment of the remedial purposes thereof' . . . ."); see also, *Cano v. Seiu Local 32BJ*, 2021 US Dist LEXIS 113240, *16 (SDNY 2021).  As such, claims under the NYSHRL must now also be analyzed separately from those under Title VII, and Plaintiff's Third and Fourth Causes of Action must survive Defendants' instant motion.

B.    <u>Even If The Court Were To Consider The State Claims For Discrimination,</u>
      <u>Disparate Treatment, and Retaliation, On Their Merits, Dismissal Is Not Warranted</u>

---

[12] NYSHRL construction provision now reads:
     The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, *regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed. Exceptions to and exemptions from the provisions of this article shall be construed narrowly in order to maximize deterrence of discriminatory conduct*. L 2019, ch 160, §6 (new language emphasized).

"Under the NYCHRL, there are not separate standards for discrimination and harassment claims." *Johnson v. Strive E. Harlem Empl. Group*, 990 F.Supp.2d 435, 445 (SDNY 2014).  To set forth a claim for discrimination under the NYCHRL, and now the NYSHRL, a plaintiff need only demonstrate that he has been treated less well than other employees at least in part for a discriminatory reason; in this case, Eliav's religion and national origin. See *e.g., Mihalik*, 715 F.3d at 110 (2nd Cir 2013); see also, *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dept 2009); *Sotomayor v. City of New York*, 862 F.Supp.2d 226, 261 (EDNY 2012).  In addition, to set forth a claim for retaliation under either the NYCHRL or the NYSHRL, a plaintiff need only allege an action that disadvantaged him and which might be reasonably likely to deter a person from engaging in a protected activity.  See *e.g., Root v. City Univ. of New York*, 2021 WL 435297, at *8-9 (S.Ct., NY Cty Sept. 24, 2021); *Harrington v. City of New York*, 157 A.D.3d 582, 585 (1st Dept. 2018).  Unlike under Title VII, retaliation claims under the NYCHRL, and now the NYSHRL, and not subject to a but-for restriction, they, like other claims of discrimination, need only be a causal factor to be actionable.

Moreover, and contrary to Defendants' current contention, liability under the NYCHRL, and now the NYSHRL, may be imposed against both employers and individuals. Individuals can be directly liable under NYCHRL if they actually participated in the discriminatory behavior or they aided and abetted the same (as with NYSHRL). See *e.g., Schaper v. Bronx Lebanon Hospital Center*, 408 F.Supp.3d 379, 395 (SDNY Sept. 30, 2019); see also, *Schanfield v. Sojitz Corp. of Am.*, 663 F.Supp.2d 305, 344 (SDNY 2009); *Stryker v. HSBC Sec. (USA),* 2020 WL 5127461, at *16 (SDNY Aug. 31, 2020).   Employers are vicariously liable for their employees' conduct if (a) the bad actor had managerial or supervisory responsibility; (2) the company knew of the employer

knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take immediate corrective; or (c) the company should have known of the bad conduct and did not use reasonable diligence to prevent it. See *e.g., Zakrzewska v. New Sch*., 14 N.Y.3d 469 (2010); see also *Maynard v. Montefiore Medical Center*, 2021 WL 396700 at *8 (SDNY Feb. 4, 2021); *Pollock v. Shea*, 568 F.Supp.3d 500, 511 (SDNY Oct. 26, 2021).

Given the facts, as related hereinabove, it is clear that Eliav has demonstrated that he was treated less well than other employees based solely on his religion and national origin.  In this case, the Defendants went so far as to weaponize Eliav's religious beliefs against him as a means of intentionally precluding him from meetings and ostracizing him, as well as, *inter alia*, directly castigating him for not working on religious holidays.  The acts, as per the AC, were perpetrated by each of the Individual Defendants.  The same Defendants precluded Plaintiff's advancement and orchestrated his termination.  The third and fourth causes of action must proceed.

C.     The AC Establishes A Claim For Hostile Work Environment Under the NYSHRL
       Against All Defendants and Under The NYCHRL Against The Individual Defendants

To plead an actionable hostile work environment under either the NYCHRL or the NYSHRL, a plaintiff must allege that he was subjected "to inferior terms, conditions or privileges of employment" – that he was treated less well than other employees -- because of his protected characteristics, in this case his religion and national origin. See *e.g., Cano*, 2021 US Dist LEXIS 113240, at *16; *Chin v. New York City Hous. Auth*., 106 A.D.3d 443, 445 (1st Dept 2013); *Golston-Green v City of New York*, 184 A.D.3d 24, 40-1 n3 (2nd Dept 2020).  A plaintiff is no longer required to demonstrate the existence of a comparator, and it is the company's burden to raise as an affirmative defense (in its answer not in a motion to dismiss) and the prove "the conduct's triviality." *Mihalik*, 715 F.3d at 110-1 (Under the NYCHRL, and now the NYSHRL, "the conduct's

severity and pervasiveness are relevant only to the issue of damages" not liability and not a motion to dismiss).

Oddly, despite Eliav bringing his hostile work environment claim under the NYCHRL and the NYSHRL, Defendants chose to analyze the claim under the wholly inapplicable standards of Title VII and now are precluded from dismissing this claim as set forth in the AC.  Nevertheless, and as set forth above, the AC has set forth well more than enough facts to support this claim on the merits as well.  The fifth cause of action must also proceed.

<u>Point III</u>

<u>THE AC SETS FORTH CLAIMS UNDER 75-B AGAINST RIOC SUFFICIENT TO SURVIVE A MOTION TO DISMISS</u>

§75-B prohibits a public entity such as RIOC, from taking adverse action against an employee because of that employee's disclosure of information "(ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action." N.Y. Civ. Serv. Law §75-b(1)(a), (2)(a). Improper governmental action is specifically defined as "any action by a public employer or employee, or an agent of such employer or employee, which is undertaken in the performance of such agent's official duties, whether or not such action is within the scope of his employment, and which is in violation of any federal, state or local law, rule or regulation." §75-b(2)(a). Failure to comply with FOIL requests in a legal manner certainly would constitute a violation of a "local law, rule or regulation" and there is no doubt that Eliav had a reasonable belief as to the same.  In analyzing any §75-B claim it is critical to remember that the goal of §75-B is to remediate "adverse employment actions which, if allowed, would undermine an important public policy." *Tipaldo v. Lynn*, 76 A.D.3d 477, 482 (1st Dept 2010); *Castro v. City of New York*, 141 A.D.3d 456 (1st Dept 2016). As such, the elements should

be liberally construed, and whether a good faith effort to report misconduct was made should be considered. *Tipaldo*, 26 N.Y.3d at 212.

Contrary to the cases cited by the Defendants, the cases that follow the above guidance and rely solely on the actual text of the statute require denial of the instant motion to dismiss as to this cause of action.  As the Court recently noted in *McCourt v. Fashion Institute of Technology,* 2023 WL 3175057 at * 21 (S.Ct., NY Cty, May 1, 2023), "[n]othing in CSL §75-B suggests that disclosures made in the course of one's normal job responsibilities may not also be protected disclosures, and there appears to be no authority to support such a proposition." Similarly, and also contrary to the contentions of Defendants, "based on the statutory definition, it appears that the 'governmental body' to which a public employee may report a statutory violation or deficient condition could be a 'governmental body' within the employee's own employer." *Jaeger-Ramberg v. New York City Health and Hospitals Corporation*, 2007 WL 2176391 (S.Ct. NY Cty, June 5, 2007); see also, *Medina v. Department of Education of the City of New York*, 950 N.Y.S.2d 724 (S.Ct. NY Cty 2012) (Internal complaint to supervisor sufficient to satisfy §75-B absent showing by agency defendant why complaint was insufficient "or that petitioner could have or should have notified someone else in order to obtain relief"); *Vibert v. County of Rensselaer*, 2017 WL 3948455 at *4-5 (NDNY 2017) (Complaint to undersheriff as an employee of a public employer about Sheriff sufficient to satisfy §75-B).

In the instant case, Defendants were aware of the complaint.  It was a complaint not part of a discussion.  Just because, RIOC, through Robinson and Haynes, acquiesced and corrected the wrong, does not mean either that there was no required complaint or that they could not then improperly retaliate against Eliav.  In fact, that is exactly what happened.  With weeks of his good

faith intervention and complaint to ensure that the law was followed, he was summarily terminated by RIOC.  This cause of action should survive.

Point IV

THE AC SETS FORTH CLAIMS FOR RETALTION AGAINST RIOC FOR ITS FILING OF A FRIVOLOUS COUNTER-CLAIM

In order to set forth a claim for retaliation, a plaintiff must allege: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2nd Cir. 2005); *Terry v. Ashcroft,* 336 F.3d 128, 141 (2nd Cir. 2003). Application of the New York State anti-discrimination laws "explicitly requires an independent liberal construction in all circumstances" so as to advance its "uniquely broad and remedial purposes, which go beyond those of counterpart State of federal civil rights laws." *Williams,* 61 A.D.3d at 62. Specifically, under the NYSHRL, it is clear that it is illegal for an employer to retaliate in any manner against an employee for making a complaint of discrimination. *Sorrenti v. City of NY.,* 17 Misc. 3d 1102A, 851 N.Y.S.2d 61, 2007 WL 2772308, at *4 (N.Y. Sup. Ct. 2007) (unreported); *Farrugia v. N Shore Univ. Hosp.,* 13 Misc. 3d 740, 820 N.Y.S.2d, 718, 727 (N.Y. Sup. Ct. 2006).

The law is clear.  Counter-claims like the one at issue herein can be found actionable as retaliatory. See, *e.g., Yankelevitz v. Cornell Univ.,* 1996 U.S. Dist. LEXIS 11298, 1996 WL 447749, at *4 (S.D.N.Y. 1996) (Wherein the Court has expressly refused "to adopt a rule stating that ... counterclaims, or any other legal cause of action, cannot, as a matter of law, constitute retaliation in violation of the employment discrimination laws" and determining that the Plaintiff

24

therein had sufficiently stated facts to support a claim for retaliation based on the filing of a counter-claim in response to a discrimination complaint); *Kreinik v. Showbran Photo, Inc.,* 2003 U.S. Dist. LEXIS 18276; 2003 WL 22339268 (SDNY 2003) (Upholding claim for retaliation based on filing of counter-claim in response to a discrimination complaint); *Fei v. WestLB AG*, 2008 U.S. Dist. LEXIS 16338; 155 Lab Cas. (CCH) P35,406 (HB) (S.D.N.Y. 2008) (Upholding claim for retaliation based on filing of counter-claim in response to discrimination complaint); *Klein v. Town & Country Fine Jewelry Group, Inc.,* 283 A.D.2d 368 (2001).

RIOC's vindictive filing of a sham and unjustified counter-claim was malevolently designed solely to harm Eliav. It raised allegations not referenced by Eliav in the AC or earlier charges of discrimination and far exceeded the bounds of any issues or allegations that he raised; is unsupported by the facts or existing case law; and, in fact, is contrary to the relevant law of the jurisdiction. If the pending motion to dismiss the counter-claim is granted, this claim must survive.

<u>Conclusion</u>

WHEREFORE, it is respectfully requested that the Court enter an Order denying the Defendants' Motion to Dismiss in its entirety and granting to Plaintiff any such other or further relief as the Court deems fit and proper.

Dated: New York, New York
     July 28, 2023

The Law Offices of Neal Brickman, P.C.
Attorneys for Arthur Eliav
Ethan Leonard (EL2497)
420 Lexington Avenue - Suite 2811
New York, New York 10170
(212) 986-6840
ethan@brickmanlaw.com