```
                                                              USDC SDNY
                                                              DOCUMENT
                                                              ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                                  DOC #:_____
SOUTHERN DISTRICT OF NEW YORK                                 DATE FILED: 1/18/2024
-------------------------------------------------------------X
ARTHUR ELIAV,                                     :
                                                  :
                                                  :
                 Plaintiff-Counter Defendant,     :
                                                  :         22-CV-09978 (VEC)
        -against-                                 :
                                                  :            OPINION
                                                  :
                                                  :
ROOSEVELT ISLAND OPERATING                        :
CORPORATION, SHELTON HAYNES,                      :
GRETCHEN ROBINSON, and TAJUNA                     :
SHARPE,                                           :
                                                  :
                 Defendants-Counter Claimants.    :
-------------------------------------------------------------X
```

VALERIE CAPRONI, United States District Judge:

On November 23, 2022, Plaintiff Arthur Eliav ("Plaintiff") sued Roosevelt Island Operating Corporation ("RIOC"), Shelton Haynes, Gretchen Robinson, and Tajuna Sharpe (collectively, "Defendants") for employment discrimination. *See* Compl., Dkt. 1.[1] Plaintiff brings claims pursuant to Title VII, the New York Executive Law § 296 ("NYSHRL"), New York City Human Rights Law ("NYCHRL"), and New York Civil Service Law § 75-B. *See* Am. Compl. On January 23, 2023, Defendants asserted a state law counterclaim against Plaintiff for breach of fiduciary duty and breach of the duty of loyalty. *See* Answer, Dkt. 20.

Defendants moved to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Defs. Mot., Dkt. 37. Plaintiff opposed the motion, *see* Pl. Mem. of Law, Dkt. 40, and moved to dismiss Defendants' counterclaim, *see* Pl. Mot., Dkt. 32. For the reasons discussed below, Defendants' motion to dismiss Plaintiff's federal claims is

---

[1] Plaintiff filed an Amended Complaint on April 10, 2023. *See* Am. Compl., Dkt. 30. The Amended Complaint is the operative complaint.

GRANTED, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state and city law claims and Defendants' state law counterclaim.

I. BACKGROUND[2]

Plaintiff began his employment in the RIOC Legal Department as an Assistant General Counsel after graduating from law school in 2006. Am. Compl. ¶ 13. Plaintiff is a white male, born in Tashkent, Uzbekistan of Central Asian/Iranian extraction, and is an Orthodox Jew. *Id*. ¶¶ 6, 58. In 2011, Plaintiff was promoted to the position of Associate General Counsel; he remained in that role until his employment was terminated in late 2021. *Id*. ¶¶ 14, 52–53. Plaintiff alleges that Shelton Haynes, President and CEO of RIOC, Gretchen Robinson, General Counsel of RIOC, and Tajuna Sharpe, Director of Human Resources or as Assistant Vice-President of RIOC, all of whom are African American, discriminated against him. Am. Compl. ¶¶ 8–10, 29, 51.

### A. Plaintiff's Employment

Although Plaintiff has been employed in the RIOC legal department since 2006, he seems to trace discrimination against him to 2016. That year, Donald Lewis, RIOC's former General Counsel, filed a civil rights action against RIOC; Plaintiff testified on Lewis's behalf. *Id*. ¶ 16. Plaintiff alleges that RIOC held his testimony against him. *Id*.

Plaintiff received the maximum performance-based salary increases in years in which such raises were available to RIOC employees; his requests for promotions and other raises were, however, denied. *Id*. ¶¶ 19–20. Plaintiff complains that on two occasions when the General Counsel position became vacant, RIOC did not post the position and hired an outside

---

[2] The well-pled facts alleged in the Amended Complaint are assumed true for purposes of evaluating Defendants' motion to dismiss. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). The facts are taken from the complaint and any documents incorporated by reference therein.

candidate. *Id*. ¶¶ 20, 24. Plaintiff also complains that he was required to take on duties of another employee without additional compensation. *Id*. ¶ 21.[3]

Plaintiff alleges that on a few occasions, Jacqueline Flug, a previous RIOC General Counsel who is Jewish but not Orthodox, commented negatively to Plaintiff about the fact that Orthodox Jews count only men when determining whether they have a minyan. *Id*. ¶ 65. Additionally, she told Plaintiff that her mother refused to shop at stores owned by Orthodox Jews because of the treatment of women in Orthodox Judaism. *Id*.

Plaintiff alleges that RIOC purposefully excluded him from its "public meetings, classes, and opportunities" by holding certain meetings in a church on Roosevelt Island. *Id*. ¶ 27. Plaintiff also complains that, under Defendants' leadership, responsibility for preparing and reviewing the budget for the Board was moved from him to the Finance Department. *Id*. ¶ 28

**B. Fall 2021**

Plaintiff complains about three events that occurred in fall 2021. First, in early fall, Robinson, the General Counsel, complained about Plaintiff taking time off work to observe the Jewish holidays. *Id*. ¶ 30. Second, Defendants rescheduled RIOC's September budget meeting so that it would occur on September 29, 2021. *Id*. Plaintiff alleges that the meeting was rescheduled to a date Defendants knew he could not attend because it was a Jewish holiday. *Id*. ¶ 31.

The third event involved RIOC's decision to create and fill a Deputy General Counsel ("DGC") position. On November 24, 2021, Robinson told Plaintiff and one of his colleagues that RIOC would be adding a Deputy General Counsel position due to an uptick in commercial litigation cases and that the position would be posted internally. *Id*. ¶ 44. Robinson asked

---

[3] Plaintiff alleges that RIOC promised him a nominal increase of $2,500 for taking on the additional duties, but the increase was never paid. *Id*. ¶ 22 n.1.

Plaintiff and his colleague for feedback on the posting, and she invited Plaintiff to apply for the position. *Id*. ¶¶ 44, 47. The posting stated that trial experience was required, even though no prior postings or job descriptions for RIOC attorneys required such experience. *Id*. ¶¶ 46–47. Because RIOC's litigation is handled by outside counsel, Plaintiff alleges that trial experience is not necessary and that the requirement was included so that he would be unqualified for the position. *Id*. ¶¶ 46, 48.

On November 29, 2021, Plaintiff emailed Robinson, copying Sharpe, Haynes, and another colleague, complaining about the trial experience requirement for the DGC position. *Id*. ¶ 50. Plaintiff sent a second email to Robinson, complaining that the hiring process was "rigged and unfairly prejudicial and specifically designed to exclude him personally." *Id*. ¶ 51. Less than 48 hours later, Robinson terminated Plaintiff's employment. *Id*. ¶ 52. Plaintiff alleges that Defendants terminated his employment because Haynes was angry about his emails. *Id*. It appears that Plaintiff did not apply for the DGC position.[4]

At some point (apparently after Plaintiff had been terminated), Markus Sztejnberg, an attorney who had previously served as RIOC's Special Counsel for Ethics, Risk and Compliance, was hired as RIOC's DGC. *Id*. ¶¶ 47, 49. Sztejnberg is Jewish of Ashkenazi/European ancestry, but he is not Orthodox. *Id*. ¶ 49.

At the time of his termination, Plaintiff was the sixth ranking employee at RIOC based on salary; of the five employees who outranked him, four were African American, and one was white. *Id*. ¶ 54. Plaintiff alleges that his termination was "part of an overall systematic elimination of non-African-American employees from positions of authority at RIOC." *Id*.

---

[4] The Court surmises that Plaintiff did not apply for the position because the Amended Complaint contains no allegation that he did apply.

4

For the following reasons, Defendants' Motion to Dismiss Plaintiff's federal claims is GRANTED, and the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state and city law claims and Defendants' state law counterclaim.

## DISCUSSION

**II.      Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[A] complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although the Court is generally confined to "the allegations contained within the four corners of [the] complaint," *Carlin v. Davidson Find LLP*, 852 F.3d 207, 212 (2d Cir. 2017), it may consider materials attached to the complaint or incorporated by reference, documents in Plaintiff's possession or of which Plaintiff had knowledge and relied on in bringing suit, as well as matters appropriate for judicial notice, *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### III.     Plaintiff's Title VII Claims

#### A. Timeliness of Claims

A Title VII claim is timely if the alleged discriminatory conduct occurred less than 300 days prior to the filing of the Equal Employment Opportunity Commission ("EEOC") charge. *Taylor v. City of New York*, 207 F. Supp. 3d 293, 300 (S.D.N.Y. 2016). "This statutory requirement is analogous to a statute of limitations." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996). A plaintiff's failure to file a timely charge with the EEOC renders the claim time-barred, and the district court does not have jurisdiction over the claim. *Oshinsky v. New York City Hous. Auth.*, No. 98-CV-5467, 2000 WL 218395, at *7 (S.D.N.Y. Feb. 23, 2000).

Plaintiff filed a charge of discrimination with the EEOC on February 25, 2022, and received his right to sue letter on August 31, 2022. Am. Compl. ¶ 4. Therefore, Plaintiff can only bring claims under Title VII arising out of discriminatory conduct that took place after May 1, 2021 (300 days before he filed his EEOC complaint). *See Williams v. New York City Dep't of Educ.*, No. 19-CV-1353, 2019 WL 4393546, at *7 (S.D.N.Y. Aug. 28, 2019).

Title VII's continuing violation doctrine provides that "if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Washington v. Cnty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (citation omitted). The word "practice" refers to "a discrete act or single occurrence;" a "discrete retaliatory or discriminatory act occurred on the day that it happened." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) (internal quotations omitted). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* (citation omitted). "With respect to claims based on termination, failure to promote, denial of

6

transfer, or refusal to hire, [Title VII] precludes recovery for *discrete* acts of discrimination or retaliation that occur outside the statutory time period, even if other acts of discrimination occurred within the statutory time period." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (internal citations and quotations omitted).

Plaintiff alleges conduct dating back to 2016 when he provided favorable testimony in a discrimination lawsuit brought by another RIOC employee. Am. Compl. ¶ 16. The only adverse actions alleged that are not time-barred, however, are Plaintiff's claims from fall 2021 when he was not promoted to DGC and when he was fired. The Amended Complaint makes a conclusory assertion that the lawsuit is "based on the continuing policy of discriminatory and retaliatory actions undertaken by Defendants in improperly denying promotions to, and terminating, [Plaintiff], as well as subjecting him to an ongoing hostile work environment and continued harassment[.]" *Id*. ¶ 3. That is insufficient to allege a continuing violation. Because Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period," the Court finds the continuing violation doctrine does not apply, a point seemingly conceded by Plaintiff. Pl. Mem. at 1-2 ("Plaintiff readily acknowledges that only the latest iteration of [denying him a promotion] falls within the relevant actionable time period."). *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004). Accordingly, Plaintiff's Title VII discrimination claims are limited to allegations of discrimination that occurred between May 1, 2021 and late November 2021, when his employment was terminated.

### B. Discrimination

A plaintiff alleging discrimination in violation of Title VII[5] must allege sufficient facts to make his claim plausible in light of the presumption that arises at the complaint stage in plaintiff's favor under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). Although "a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss, it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *Equal Emp. Opportunity Comm'n v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (internal citations and quotations omitted). The elements of employment discrimination are that the mistreatment occurred because of a protected characteristic and that the complained of employment action rises to the level of an "adverse employment action." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007). In order to qualify as an "adverse employment action," the "action must cause a materially adverse change in the terms and conditions of employment, and not just 'mere inconvenience;'" termination of employment is obviously an adverse employment action. *Id*. (citation omitted).

#### 1. Failure to Promote Claim

To plead a discriminatory failure to promote, a plaintiff must allege that: "(1) [h]e is a member of a protected class; (2) [h]e applied and was qualified for a job for which the employer was seeking applicants; (3) [h]e was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Brown v.*

---

[5] Title VII provides that an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

*Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998). The requirement to have applied for the position can be excused if the plaintiff alleges facts from which the Court can plausibly infer that the employer's discriminatory practices made application futile. *Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1213 (2d Cir. 1993).

Plaintiff does not allege that he applied for the DGC position; he alleges that the process was "rigged" and that the litigation experience requirement was included to exclude him from consideration. Am. Compl. ¶¶ 50–51. The Court will construe those allegations as an attempt to allege that application would have been futile. That theory fails to rescue this claim, however, because Plaintiff has failed to allege facts from which the Court can infer any discriminatory motive on the part of Defendants.

The only facts that tend to suggest a discriminatory motive are the remarks about Orthodox Judaism attributed to Flug. *Id*. ¶ 65. Plaintiff adequately alleges that Flug made disparaging comments about Orthodox Jews, but Flug was not a decisionmaker when the qualifications for the DGC position were determined. *Id*. ¶ 23. Other than Flug's comments, the Amended Complaint includes only Plaintiff's opinion that litigation experience was not required to perform the duties of the DGC, leading him to conclude that the requirement was included only to exclude him, because of his religion or national origin, from consideration.

RIOC was well within its rights to determine that the individual hired for the DGC role had to have trial experience. *See Abraham v. New York City Dep't of Educ.*, 398 F. App'x 633, 635 (2d Cir. 2010) ("[E]mployers, not the court, determine what qualifications are necessary."). Although Plaintiff may himself believe that he was more qualified and had more pertinent experience than previous individuals hired into the General Counsel role, Am. Comp. ¶ 61, and may genuinely believe that trial experience was not necessary to perform the DGC job, *id*. ¶ 46, he acknowledges that he lacked the trial experience that RIOC decided was necessary for the

9

position. Pl. Mem of Law at 8. *See also Rumala v. N.Y.C. Transit Auth.*, No. 2-CV-3828, 2005 WL 2076596, at *14 (E.D.N.Y. Aug. 26, 2005) ("Under the law . . . it is the perception of the decisionmaker, and not that of plaintiff, which is relevant.").

Plaintiff has not alleged any facts from which the Court can infer, even at this early stage of the litigation and drawing all inferences in his favor, a discriminatory motive in Defendants' decision to require trial experience for the DGC position. Flug left RIOC prior to fall 2021 and, therefore, would not have been involved in deciding the qualifications required for the DGC position. Am. Comp. ¶¶ 23, 65. The Amended Complaint does not allege a single other comment made by Haynes, Robinson, or Sharpe related to Plaintiff's religion or national origin or otherwise suggesting discriminatory intent.[6]

Because Plaintiff did not apply for the DGC position and alleges no facts from which the Court can infer that Defendants set the job requirements for the DGC position to exclude Plaintiff from consideration on account of his religion or national origin, he has not stated a claim for failure to promote.

### 2. Termination Claim

Plaintiff alleges that his termination in November 2021 was discriminatory. The Amended Complaint asserts that Plaintiff's "terminat[ion] [w]as part of an overall systematic elimination of non-African-American employees from positions of authority at RIOC." *Id.* ¶ 54. At the time of Plaintiff's termination, he was the sixth highest paid employee at RIOC, and four of the employees who were paid more were African American. *Id.*

---

[6] Sztejnberg, who was hired into the DGC role, is Jewish. Although the Amended Complaint alleges he was not Orthodox, the fact that a Jew was hired undermines Plaintiff's core allegation that he was not promoted on account of his religion. *Id.* ¶ 49.

10

Defendants argue that Plaintiff's claim that he was terminated on account of his religion is too conclusory to survive a 12(b)(6) motion and that alleging the termination was part of a systematic plan to eject non-African American employees from RIOC is not plausible. Defs. Mem. of Law at 16–17, Dkt. 38. *See also Lizardo v. Denny's Inc.*, 270 F.3d 94, 104 (2d Cir. 2001) ("Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to race. This is not sufficient."); *Hussey v. New York State Dep't of Att'y Gen.*, 933 F. Supp. 2d 399, 408 (E.D.N.Y. 2013) (dismissing plaintiff's failure to promote claim and finding the allegation that she was not promoted "as a result of defendants' individual policy and custom of disproportionate hiring and promoting African American line attorneys" to be insufficient). Defendants also argue that Plaintiff's discriminatory discharge claim fails because the Amended Complaint itself alleges Defendants' reason for firing Plaintiff – that Haynes "was angry" about the two emails that Plaintiff sent about the DGC posting – and Plaintiff fails to allege any facts from which the Court could plausibly infer that the reason was pretextual. Am. Compl. ¶ 52; Defs. Mem. of Law at 17; s*ee Soto v. Marist Coll.*, No. 17-CV-7976, 2019 WL 2371713, at *6 (S.D.N.Y. June 5, 2019) ("Plaintiff's claim of race-based discrimination is further undermined by the fact that the Amended Complaint specifically identifies Defendants' stated reason for firing Plaintiff, and Plaintiff pleads no facts explaining why that reason was pretextual.").

The Court agrees with Defendants that Plaintiff has not alleged sufficient facts for the Court to infer that his termination was due to discrimination. RIOC hired Sztejnberg for the DGC position, and like Plaintiff, he is not African American; that undercuts the notion that Plaintiff was terminated as part of a grand strategy to remove non-African American employees from RIOC. Plaintiff's bare assertion that he was terminated on account of his religion and

national origin is entirely conclusory.[7] *See Bentley, Jr. v. Mobil Gas Station*, 599 F. App'x 395, 396 (2d Cir. 2015) (holding that a plaintiff's "naked allegation that the defendant acted based on the plaintiff's race and color is too conclusory to survive a motion to dismiss"). Moreover, as Defendants argue, the Amended Complaint itself alleges that Defendants terminated Plaintiff due to the two emails he sent about the DGC posting, and Plaintiff does not allege that reason was pretextual.

In short, neither Plaintiff's discriminatory failure to promote or termination claim survives Defendants' motion to dismiss.

### C. Disparate Treatment

Plaintiff also alleges disparate treatment on account of his religion and national origin. A plaintiff may establish a claim of disparate treatment under Title VII either (1) by showing that he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin, or (2) by demonstrating that harassment on one or more of those bases gave rise to a hostile work environment. *See Raniola v. Bratton,* 243 F.3d 610, 617 (2d Cir. 2001).

As discussed above, *supra*, Plaintiff failed to allege that he suffered an adverse employment action due to discrimination, so the Court will analyze whether the Amended Complaint adequately alleges a hostile work environment.[8] To establish that a hostile work

---

[7] As discussed *supra*, Plaintiff's non-conclusory allegations suggesting discriminatory intent at RIOC all involve comments by Flug, a former General Counsel who was no longer employed by RIOC when Plaintiff was terminated. His allegation that he was harassed by Robinson for taking time off for religious holidays is entirely conclusory. The other two incidents of alleged harassment (rescheduling a budget meeting and holding unspecified public events in a church) simply do not give rise to an inference of discriminatory intent.

[8] The Amended Complaint lacks clarity whether Plaintiff intended to allege a federal hostile work environment claim, as he did under state and city law. The Court will, however, analyze it under federal law for good measure.

environment constitutes discrimination, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citations omitted). "The incidents complained of 'must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)). Thus, while a single incident can suffice to substantiate a hostile work environment claim, such an incident, to qualify, must be "extraordinarily severe." *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (citation omitted).

Plaintiff has adequately alleged that he subjectively perceived the work environment at RIOC to be hostile. The Amended Complaint lacks, however, allegations tending to show that a reasonable person would find the workplace to be hostile or abusive. Plaintiff alleges that, in early fall 2021, Robinson "harassed" him for taking time off from work to observe religious holidays. Am. Compl. ¶ 30. The harassment was apparently comprised of Robinson rescheduling a budget meeting that had been scheduled months earlier for September 2, 2021, to September 29, 2021, a date Defendants supposedly knew Plaintiff could not attend due to a religious holiday. *Id.* ¶¶ 30–31.[9] The Amended Complaint also alleges that RIOC held "public

---

[9] The Amended Complaint is not clear whether rescheduling the meeting was in addition to other "harassment" by Robinson or whether rescheduling the meeting was the entirety of the "harassment."

meetings, classes, and opportunities in the Church on Roosevelt Island," and that Defendants purposefully chose that location to exclude Plaintiff, knowing that, as an Orthodox Jew, he could not attend an event in a church. *Id.* ¶ 27. Plaintiff also alleges that Flug, a prior General Counsel, commented negatively at least twice on the treatment of women in Orthodox Judaism. *Id.* ¶ 65.

Accepting as true all of the factual allegations in Plaintiff's Amended Complaint and construing them in the light most favorable to him, those allegations do not adequately allege a hostile work environment that is so severe or pervasive that a reasonable person would have perceived it to be hostile or abusive. *See Littlejohn*, 795 F.3d at 321. Robinson's comments regarding time off to observe religious holidays[10] and Flug's two comments fall in the category of petty slights. *See Sandler v. Montefiore Health Sys., Inc.*, No. 16–CV–2258, 2018 WL 4636835, at *10 (S.D.N.Y. Sept. 27, 2018) (finding comments relating to plaintiff's Jewish identity, even where "supplement[ed]" by "facially neutral harsh treatment," insufficient to sustain a federal hostile work environment claim). Plaintiff's allegations that the budget meeting was rescheduled to a date conflicting with a Jewish holiday[11] and that RIOC held "public meetings, classes, and opportunities"[12] in a church to purposefully exclude him are entirely conclusory. *See Fleming v. MaxMara USA, Inc.,* 371 F. App'x 115, 119 (2d Cir. 2010) (concluding that no hostile work environment existed even though "defendants wrongly excluded [the plaintiff] from meetings, excessively criticized her work, refused to answer work-

---

[10] It is not clear whether Robinson made any comment beyond "orchestrating" the rescheduling of the budget meeting. *See* note 9 *supra*.

[11] Plaintiff alleges no facts that would allow the Court to infer that attending the rescheduled budget meeting was required by, or even relevant to, Plaintiff's job in the Office of General Counsel.

[12] The Amended Complaint is silent on whether there was any connection between the meetings, classes and opportunities that were held in the church and Plaintiff's job.

related questions, arbitrarily imposed duties outside of her responsibilities, threw books, and sent rude emails to her").

The Court must also analyze the alleged incidents cumulatively to determine whether, in their totality, Plaintiff has alleged sufficient facts to make out a prima facie case. *See Williams v. N.Y.C. Hous. Auth.*, 61 F.4th 55, 74 (2d Cir. 2023). Even considering the incidents cumulatively, however, the Court finds that Plaintiff has failed to plead facts that would allow the Court plausibly to infer that a reasonable person would perceive the work environment to be hostile or abusive. At most, Plaintiff's allegations represent "episodic" instances of "mere offensive utterance[s]" that were neither severe enough nor pervasive enough to have altered the conditions of his work environment. *See Alfano*, 294 F.3d at 374.

Accordingly, Defendants' motion to dismiss Count I is granted.

### D. Retaliation

Title VII also prohibits discrimination against an employee "because he has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). Courts analyze Title VII retaliation claims under the *McDonnell Douglas* framework. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). To assert a prima facie case of retaliation, the plaintiff must allege facts tending to show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse action." *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).

The only purportedly protected activities alleged by Plaintiff that are not time barred are his complaints via email on November 29, 2021, regarding the DGC posting.[13]  *See* Aff. of Howard M. Miller, Exs. A, B, Dkt. 22.

Defendants argue that Plaintiff's November 29, 2021, emails do not constitute protected activity because Plaintiff complained that the qualifications for the DGC position were "generically unfair;" he did not complain in those emails about discrimination.  *See* Defs. Mem. of Law at 19.  *See also Marks v. Nat'l Commc'ns Ass'n, Inc.*, 72 F. Supp. 2d 322, 337 (S.D.N.Y. 1999) (plaintiff did not engage in protected activity where she made a failure-to-promote complaint to employer, arguing about her qualifications but never suggested gender-bias as motivation).

In order to constitute protected activity, "the employee's complaint must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by the anti-discrimination laws, as opposed to complaining about unfair or unpleasant treatment generally." *Green v. Mount Sinai Health Sys., Inc.*, No. 17-CV-3999, 2019 WL 4392691, at *4 (S.D.NY. Sep. 12, 2019), *aff'd*, 826 F. App'x 124 (2d Cir. 2020) (internal quotations and citations omitted).  To come within the ambit of Title VII's anti-retaliation provisions, the purportedly protected activity needs to be "sufficiently specific . . . so that the employer is put on notice that the plaintiff believes he . . . is being discriminated against on the basis of . . . [a protected characteristic]." *Jaeger v. N. Babylon Union Free. Sch. Dist.*, 191 F. Supp. 3d 215, 232 (E.D.N.Y. 2016) (citations omitted).  "[A]bsent a claim of unlawful discrimination, general

---

[13] Plaintiff's testimony in the 2018 litigation against RIOC was a protected activity, but all adverse actions prior to May 2021 are time barred.  As noted previously, the only post-May 2021 adverse actions alleged are the failure to promote Plaintiff to DGC and his termination.

16

complaints about employment concerns do not constitute protected activity under Title VII." *Id*. (citations omitted).

Plaintiff's emails to Defendants claim that the DGC posting was "tailored to exclude [his] candidacy;" "that [the] process [was] clearly set up to deny [him] this promotion in favor of another individual," and the process was "intentionally prejudicial and rigged." *See* Aff. of Howard M. Miller, Exs. A, B.[14] There are no references to Plaintiff's religion or national origin, and, as such, these emails would not have put Defendants on notice that Plaintiff was complaining about alleged discrimination. *See Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007) (holding that "ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct" do not constitute protected activity). Plaintiff's emails did not mention discrimination or disparate treatment; although no "magic words" are required, the content of Plaintiff's emails, construed in the light most favorable to him, would not have put Defendants on notice that Plaintiff was complaining about invidious discrimination as opposed to simply complaining about the impact the contents of a job posting would have on him and quarreling with the requirements.

Even though the Amended Complaint includes a number of other instances in which Plaintiff complained about his treatment by RIOC,[15] there are no allegations that he ever included in those complaints that he believed he was being discriminated against because of his

---

[14] The Court can consider Plaintiff's emails because he relied on them in his Amended Complaint. S*ee DiFolco*, 622 F.3d at 111 (noting that district courts may consider materials incorporated by reference in the complaint).

[15] Plaintiff's other complaints included: him being required to take on internal control duties without a reduction of his existing duties and without an increase in compensation, Am. Compl. ¶ 21–22; RIOC's policy to delay responses to FOIL requests, *id*. ¶ 43; and a desire to be promoted, *id*. ¶ 29.

religion or national origin.  Without such factual allegations, none of the other complaints constitutes "protected activity" necessary to state a claim for retaliation.

Because Plaintiff has not alleged adequately that he engaged in protected activity, he has not stated a claim for retaliation under Title VII.  Consequently, Defendants' motion to dismiss Count II is granted.  Plaintiff's federal law claims are dismissed with prejudice for failure to state a claim.[16]

### IV. Plaintiff's Non-Federal Claims

Having dismissed all of Plaintiff's federal law claims, the Court must consider whether it should maintain jurisdiction over his state and local claims or Defendants' counterclaim.  The Supreme Court and the Second Circuit have held that, when federal question jurisdiction is invoked, and the federal claims are dismissed, the state law claims should usually be dismissed as well.  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

Because the Court has dismissed all of Plaintiff's federal claims, and there is no other basis for federal jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state and city law claims, as well as Defendants' state law counterclaim.  Plaintiff's state and city law claims and Defendants' counterclaims are dismissed without prejudice for lack of subject matter jurisdiction.

---

[16] District courts have "broad discretion in determining whether to grant leave to amend." *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).  Leave to amend "need not be granted where the proposed amendment is futile." *7 West 57th Street Realty Co., LLC v. Citigroup, Inc.*, 314 F. Supp. 3d 497, 510 (S.D.N.Y. 2018) (citation omitted).  Plaintiff has already amended the Complaint once, adding the bulk of his discrimination and retaliation claims, along with his New York Civil Service Law § 75–B claim; he has not asked for leave to amend the Complaint a third time; and he has given no indication that he has additional facts that would cure these pleading deficiencies.  *See* Compl.; Am. Compl.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's federal claims is GRANTED, and those claims are dismissed with prejudice. All state law claims are dismissed without prejudice. The Clerk of Court is respectfully directed to close the open motions at docket entries 32 and 37, and to terminate the case.

**SO ORDERED.**

**Date:   January 18, 2024**　　　　　　　　　　　　　　　　**VALERIE CAPRONI**
**　　　　New York, New York**　　　　　　　　　　　　　　**United States District Judge**